PEOPLE v BEHM
PEOPLE v CULPEPPER
PEOPLE v PATTERSON
PEOPLE v WHITEHEAD

1. CRIMINAL LAW—SEPARATE TRIALS—DISCRETION.

The grant or denial of a separate trial where several defendants are charged in a criminal case is discretionary and prejudice of substantial rights must be shown to establish an abuse of discretion (MCLA 768.5).

2. KIDNAPPING—OTHER OFFENSES—ADMISSIBILITY—ASPORTATION.

Testimony describing sexual assaults upon the victim in a kidnapping trial was admissible to demonstrate the independent significance of the victim's movement to establish the element of asportation (MCLA 750.349).

3. KIDNAPPING—OTHER OFFENSES—ADMISSIBILITY—RES GESTAE.

Acts and deeds emanating from a kidnapping become a part thereof so long as it continues; therefore, testimony describing sexual assaults upon the victim of a kidnapping was admissible as part of the res gestae (MCLA 750.349).

4. CRIMINAL LAW—TRIAL—OBJECTIONS—RULING WITHHELD—HARMLESS ERROR.

The practice of a trial judge of withholding ruling on objections until a recess because the objecting counsel sought argument in the absence of the jury is to be condemned because counsel are entitled to argue an objection and have a ruling on it at the time of the objection; however, the Court of Appeals will not find reversible error on this issue where the objections involved concerned evidence found admissible or not meriting a finding of error.

Appeals from St. Clair, Halford I. Streeter, J.

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 127.
[2, 3] 1 Am Jur 2d, Abduction and Kidnapping §§ 9, 32.
[4] 53 Am Jur, Trial § 824.

Submitted Division 2 February 13, 1973, at Lansing. (Docket Nos. 13294, 13394, 13395, 13331, 13292.) Decided March 27, 1973. Leave to appeal granted to defendant Culpepper, 389 Mich 792.

Michael K. Behm, Susan Culpepper, Lawrence P. Patterson, and Michael J. Whitehead were convicted of kidnapping. Behm and Culpepper were also convicted of armed robbery. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Walter W. Turton,* Prosecuting Attorney, *Peter E. Deegan,* Chief Assistant Prosecuting Attorney, and *Thomas R. Lewis,* Director, Prosecuting Attorneys Appellate Service.

*Stuart M. Israel,* Assistant State Appellate Defender, for defendants Behm, Patterson, and Whitehead.

*Frank N. MacLean (Charles T. Burke,* of counsel), for defendant Culpepper.

Before: McGREGOR, P. J., and QUINN and PETERSON,* JJ.

QUINN, J. By jury verdict, all defendants were convicted of kidnapping, MCLA 750.349; MSA 28.581. The same jury also found defendants Behm and Culpepper guilty of armed robbery, MCLA 750.529; MSA 28.797. All were sentenced and all appeal. Defendants Behm, Patterson, and Whitehead are represented by one counsel. Defendant Culpepper has separate counsel.

Claudette Taylor of Goodells and defendant Culpepper of Roseville had known each other for

---

* Circuit judge, sitting on the Court of Appeals by assignment.

several months prior to the date of the crimes involved in these appeals. They both knew the other defendants and Tom Leszczynski, a co-defendant tried separately, except Claudette met Patterson for the first time June 15, 1971. Claudette had visited the Culpepper home as an overnight guest. Miss Culpepper had a high school graduation party June 13, 1971, to which she invited Claudette. The latter attended the party and spent the night at the Culpepper home. About 75 guests attended the party.

According to Miss Culpepper, about $80 of her graduation money and $100 from her mother's purse were missing the next day. Believing Claudette had taken the money, Miss Culpepper, the other defendants, and Leszczynski drove to Port Huron to see Claudette. The trip was made in Mrs. Culpepper's Cadillac and Leszczynski drove. Defendants Behm, Patterson, and Whitehead, and Leszczynski were members of a motorcycle group known as the Savages whose meeting place was in the Roseville area. They were acquainted with a similar group based in Port Huron and known as Satan's Rebels. On the way to Port Huron the reason for and purpose of the trip were discussed.

At Port Huron, Patterson and Whitehead were let off at the Satan's Rebels' clubhouse and Leszczynski, Behm, and Miss Culpepper continued on to locate Claudette's home. Unable to locate it, they returned to the Satan's Rebels' place and picked up Patterson and Whitehead. By inquiry at a bar, Claudette's place of employment, Marysville Plastics, was located. Patterson and Whitehead were returned to Satan's Rebels' place, and Leszczynski, Behm, and Miss Culpepper returned to Marysville Plastics.

Miss Culpepper entered the plant, located Clau-

dette and asked to speak with her. Claudette and Miss Culpepper left the plant and walked to the Cadillac where Leszczynski and Behm were. The record is in dispute as to what happened next. Claudette testified that she was forced into the car at knife-point by Behm. Miss Culpepper testified that Claudette voluntarily entered the car. In any event, Claudette and Behm entered the back seat and Miss Culpepper got in next to the driver.

At this point, there is further dispute in the record. Claudette testified that Behm had his arm around her with a knife at her throat and that he told her, "Keep your mouth shut". That the auto started to drive away and Claudette asked where they were going, and Leszczynski said someone wanted to talk to her. That Miss Culpepper inquired about Claudette's purse and car and that Leszczynski told Miss Culpepper to go and get the purse.

Miss Culpepper testified that she saw no knife at Claudette's throat and that she (Miss Culpepper) told Claudette that money was missing from the party. Miss Culpepper further testified that she asked Claudette if she would go with them to talk with Mrs. Culpepper. That Claudette said she would but that her purse was in the plant and that Claudette requested Miss Culpepper to get her purse and her lunch.

Miss Culpepper retrieved the purse and the lunch and returned to the car. Further record dispute appears. Claudette testified that Miss Culpepper opened the purse without permission and removed $117. All of this time, Claudette said Behm had the knife at her throat. Miss Culpepper testified that she asked Claudette if she could look in the purse and that Claudette handed the purse to her. That Miss Culpepper found $117 in the

purse, removed it, and put it in her pocket. The record shows that Claudette withdrew $95 from the bank that day, and that on June 15, Mrs. Culpepper mailed two money orders to Claudette totalling $117.

The group then left Marysville Plastics and Leszczynski drove to Satan's Rebels' place where Patterson and Whitehead rejoined the group. Whitehead got in the front seat next to Miss Culpepper and Patterson sat in the rear with Claudette between him and Behm. At Satan's Rebels' place, Wayne Wilson, a former boyfriend of Claudette, inquired, "Did you get her?" Wilson then said, "I will kill her if you guys don't". All defendants, Leszcynski, and Claudette then departed for Roseville. .

Further dispute in the record relates to occurrences on the trip from Port Huron to Roseville and at the Culpepper residence in Roseville. It was Claudette's testimony that on the way to Roseville Behm took off her upper clothing and Patterson took off her pants. That Behm forced her to perform fellatio on him during which Patterson was fingering her vagina. That at Culpepper's, Behm threatened her and then asked if she wanted to be killed or bought and she replied "Bought". Claudette then explained that "bought" meant that she would belong either to Behm or the club and that "they can do anything they want to me".

Miss Culpepper testified that nothing improper occurred on the way to Roseville, and that at her home in Roseville, after discussing the missing money, the group left to get Patterson's car, he having offered to take Claudette back to Port Huron. His car was at the Savages' place.

At the Savages, Claudette testified as to repeated sexual assaults on her by the male defend-

ants and others, but Miss Culpepper knew nothing of this. Eventually, Claudette was returned to her place of employment.

Defendants other than Culpepper have raised 11 issues on appeal and she has raised 3 additional issues. Our analysis of the record indicates that some of these issues require no more than summary treatment, while others merit fuller exposition. We deal with the latter first.

Defendants Patterson and Whitehead assert error because they were not granted separate trials. The grant or denial of a separate trial is discretionary, MCLA 768.5; MSA 28.1028. Prejudice to substantial rights of the defendant must be shown to establish abuse of discretion, *People v Schram,* 378 Mich 145, 157 (1966). If the offense of kidnapping was properly charged and proved, the second issue we discuss, we can find no prejudice to substantial rights of Patterson and Whitehead because the record indicates their involvement in that offense. Although they were not present at the forceable abduction of Claudette, the inference from the record is strong that they were aware that Claudette was secretly confined against her will at the time Patterson and Whitehead rejoined the group at Satan's Rebels' place just before the return trip to Roseville. At one place in the record, it appears that Patterson declined Claudette's request to be released. Denial of Patterson and Whitehead's request for a separate trial was not an abuse of discretion.

Relying on *People v Otis Adams,* 34 Mich App 546 (1971), defendants contend that kidnapping was not properly charged and was not proved for the reason that asportation was not established. Recognizing that all members of the Court of Appeals do not concur in Judge LEVIN's opinion in

*Adams, supra,* and being aware that the Supreme Court has granted leave to appeal in *Adams,* 385 Mich 784 (1971), we shall first apply the statute to the facts of these cases without considering the element of asportation, born in *Adams.* The portion of the statute, MCLA 750.349; MSA 28.581, pertinent to our factual record reads:

"Any person who wilfully, maliciously and without lawful authority shall forcibly * * * confine * * * any other person within this state against his will * * * with intent either to cause such person to be secretly confined or imprisoned in this state against his will * * *."

If the jury chose to believe Claudette, which they did, the record contains ample evidence to establish the crime charged.

If the Supreme Court adopts the majority view in *Adams, supra,* and asportation is an element of kidnapping, the record still establishes the crime charged. The movement of Claudette had significance independent of the original seizure; the risk of harm to Claudette was substantially increased by the movement of her.

Over objection, Claudette was permitted to testify in detail as to the sexual assaults upon her. All male defendants assert this was reversible error. Assuming the majority opinion in *Adams, supra,* is adopted by the Supreme Court, we hold that this testimony was admissible to demonstrate the independent significance of her movement.

If *Adams* does not become the law, we hold the testimony was admissible as part of the res gestae. The offense of kidnapping continued until Claudette was released from confinement. Acts and deeds emanating from the kidnapping become a

part thereof so long as it continues, *People v Kayne,* 268 Mich 186, 192 (1934).

The prosecution and the defense referred to defendants and others by their nicknames, we find no error in the use of nicknames by Claudette in her testimony, nor do we find error in the description of defendants' dress and the lifestyle and activities of members of motorcycle clubs.

The record does not sustain defendants' claim that pretrial publicity denied them a fair trial. We cannot condone the act of the trial judge in adjourning the trial for two weeks after the jury was sworn, but we can find no prejudice to defendants arising from the adjournment.

Defendants assert reversible error because the trial judge several times withheld ruling on objections until a recess because the objecting counsel sought argument in the absence of the jury. Counsel are entitled to argue an objection and to have a ruling on it at the time of the objection. The practice here complained of is to be condemned, but the objections involved concerned evidence we have found admissible or as not meriting a finding of error; hence we find no error on this issue. The same finding is true with respect to defendants' claim that the trial judge relied on a ruling by another judge in admitting the testimony on sexual assaults. We have found that testimony admissible, and if any error occurred, it was not of the reversible variety.

The record does not support defendants' assertion that they were prejudiced by police intimidation of a defense witness.

In the event that asportation eventually becomes an element of the crime of kidnapping, it was not reversible error to fail to instruct the jury

on asportation on the facts of this case, *People v Mobley,* 40 Mich App 551 (1972).

There was no reference by the prosecuting attorney in final argument to defendants' failure to testify. His statement that only two eyewitnesses testified related to the fact.

The issue on the armed robbery instruction is not before us; it was not preserved for review.

It is defendants' contention that it was error to exclude lesser included offenses in the instructions. Lesser included offenses were not supported on the record, and we find no error, *People v Membres,* 34 Mich App 224 (1971).

The questioning of Claudette as to defendant Culpepper's use of drugs was not objected to below and this claim of error was not saved for review. In addition, the subject of drug use was raised during the cross-examination of Claudette by one of the defense counsel.

We fail to find record support for defendant Culpepper's claim that the prosecuting attorney required her to waive production of an endorsed medical witness. The prosecuting attorney stated, "If you don't waive him, I will produce him". All defense counsel waived production of the witness.

Affirmed as to all defendants.

All concurred.