PEOPLE v McCARVER

OPINION OF THE COURT

1. CRIMINAL LAW—EVIDENCE—OTHER CRIMES—PREJUDICE—OBJECTIVE
APPRAISAL—APPEAL AND ERROR.

Evidence tending to show that a defendant committed crimes
other than those charged is generally inadmissible because
whatever probative value such evidence has is outweighed by
the disadvantage of diverting the trier of fact from an objective
appraisal of defendant's guilt or innocence; therefore, a convic-
tion should be reversed where a defendant was convicted by a
jury which was faced, on more than one occasion during the
trial, with evidence that defendant had engaged in other illegal
conduct before and at the time of the charged offense.

2. CRIMINAL LAW—EVIDENCE—OTHER CRIMES—STATUTES.

Evidence of crimes other than those charged may be admitted at
trial by statutory exception, but only where: (1) defendant's
motive, intent, knowledge, etc. are material to the case; (2) the
evidence offered is of a like act; and (3) the probative value of
the evidence outweighs the attendant prejudice to the defend-
ant (MCLA 768.27; MSA 28.1050).

3. DRUGS AND NARCOTICS—AMPHETAMINES—MARIJUANA—LIKE
CRIMES—EVIDENCE—INSTRUCTIONS TO JURY.

The law treats the felony of possession of amphetamines in a
significantly different way than it treats the misdemeanor of
possession of marijuana; they are not sufficiently alike to
permit evidence of one to be admissible as evidence of a like
crime in a prosecution for the other, especially where the trial

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 320, 321.
 Comment Note.—Admissibility in criminal case of evidence rele-
 vant to the crime charged, as affected by incidental disclosure of
 another crime by defendant. 170 ALR 306.
[3] 75 Am Jur 2d, Trial §§ 623, 928, 929.
[4] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 46, 47.
[5-8] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 40, 47.
[9] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 46, 70.

court erroneously instructed the jury that both offenses were punishable to the same extent.

4. DRUGS AND NARCOTICS—EVIDENCE—OTHER CRIMES—POSSESSION OF MARIJUANA—PROBATIVE VALUE—PREJUDICE—POSSESSION OF AMPHETAMINES.

The probative value of evidence that a defendant possessed marijuana, a crime, clearly was outweighed by the prejudice the evidence caused to the defendant in his trial for possession of amphetamines where there was other evidence characterizing the defendant as a convicted felon and associating him with criminal activity in general.

DISSENT BY D. E. HOLBROOK, J.

5. DRUGS AND NARCOTICS—EVIDENCE—MARIJUANA—AMPHETAMINES— LIKE CRIMES—RELEVANCE—INTENT AND KNOWLEDGE.

*Marijuana is often transported along the same underworld networks of distribution as harder drugs, and its possession is punishable under the same statute which punishes the illegal possession of amphetamines; therefore, possession of marijuana, which occurred at the same time as possession of amphetamines, is sufficiently relevant to constitute possession of the marijuana a like act of possession for purposes of admission in evidence in a trial for possession of the amphetamines where intent and knowledge were crucial issues.*

6. DRUGS AND NARCOTICS—MARIJUANA—AMPHETAMINES—INFERENCES —KNOWLEDGE.

*A strong inference arises in a trial for possession of amphetamines that when one in possession of marijuana is also in possession of a large quantity of pills which are unblemished by pharmaceutical markings that the possessor knows the nature of the pills in his possession.*

7. DRUGS AND NARCOTICS—POSSESSION OF MARIJUANA—EVIDENCE— POSSESSION OF AMPHETAMINES—RELEVANCE—KNOWLEDGE OF IL-LEGALITY.

*The obviously illegal possession of marijuana is highly relevant in showing that the possessor had knowledge of the illegality of another concurrently possessed but not so apparently illegal drug, amphetamines, and the relevance of such evidence outweighs any prejudice to defendant being tried for possession of amphetamines where knowledge of the proscribed nature of the amphetamines was clearly material to the case.*

8. Evidence—Drugs and Narcotics—Res Gestae—Concurrent Possession.

Evidence that a defendant possessed marijuana at the same time and place that he also possessed amphetamines is part and parcel of the res gestae of the offense of possessing the amphetamines and should not be excluded from the trial for the possession of amphetamines.

9. Drugs and Narcotics—Appeal and Error—Preserving Question—Manifest Injustice.

Failure of a defendant to preserve an objection to the admission in evidence of marijuana seized at the time of his arrest, after a proper cautionary instruction, in his trial for possession of amphetamines limits appellate review of that issue, and the defendant's conviction should be affirmed where no manifest injustice has been shown.

Appeal from Berrien, Chester J. Byrns, J. Submitted October 5, 1976, at Grand Rapids. (Docket No. 24499.) Decided November 22, 1976. Leave to appeal applied for.

Alvin McCarver was convicted of possession of amphetamines. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John A. Smietanka,* Prosecuting Attorney, and *Sally M. Zack,* Assistant Prosecuting Attorney, for the people.

*Taylor, Yampolsky, Struwin & Hass,* for defendant on appeal.

Before: R. B. Burns, P. J., and D. E. Holbrook and T. M. Burns, JJ.

T. M. Burns, J. On March 26, 1975, defendant was convicted after a jury trial of possession of a controlled substance (amphetamines), MCLA 335.341(4)(b); MSA 18.1070 (41)(4)(b). On June 2,

1975, defendant was sentenced to 16 to 24 months in prison.

At the request of a U.S. Treasury agent and an officer of the Berrien County Sheriff's Department, a Federal search warrant was issued on November 25, 1974, authorizing the search of defendant's residence for firearms and narcotics. Execution of the warrant on November 26, 1974, resulted in the seizure of two shotguns, a quantity of pills, a vial containing a small amount of suspected marijuana, and a pipe containing suspected marijuana. Defendant was arrested and placed in custody.

Testimony given at the trial indicated that the pills found in defendant's home contained amphetamine and caffeine and that the vial contained marijuana. The amphetamines were introduced into evidence without objection, but defendant challenged the introduction of the vial of marijuana.

After some discussion, the marijuana was admitted into evidence.

Three defense witnesses testified that they had gone to defendant's house on November 24, 1974, to look at a motorcycle. Defendant told the three that he was gaining weight and wanted to get some diet pills. After defendant stated that his doctor would not give him diet pills because of high blood pressure, a fourth person, Dave Hawks, informed defendant that he could get some diet pills for him.

Defendant took the witness stand and corroborated the testimony of the three witnesses. He stated that Hawks sold the pills to him two days later. Shortly thereafter the search warrant was executed.

Hawks was called as a witness by defendant. He testified that he did not remember being with

defendant on November 24 and denied that he bought any diet pills or delivered any to defendant.

Defendant argues on appeal that he was unduly prejudiced by evidence presented at trial and testimony elicited by the prosecutor which indicated that defendant had engaged in criminal activity other than the offense with which he was charged. Prior to trial, the trial court granted a defense motion to exclude from the trial any evidence of defendant's prior convictions.

In testifying for the prosecution, the Federal agent who obtained the search warrant stated that defendant was a convicted felon. While cross-examining another prosecution witness, a State Police detective, defense counsel asked the witness if he had tried to get someone to help entrap defendant. The witness responded:

"I recall talking to several different persons, and they advised me that, yes, they were aware of people who were in criminal activities; they were interested in assisting me, and the name Al McCarver was brought into the picture."

On redirect examination the prosecutor pursued this point:

"*Q.* You said the name Al McCarver came up in various conversations that you had with various people in the year you have been here; is that correct?
"*A.* That's correct.
"*Q.* Did you bring up his name?
"*A.* No, ma'am.
"*Q.* Was his name brought up to you?
"*A.* Yes, it was.
"*Q.* Was it brought up in connection with alleged criminal activity?"

At this point defense counsel objected to the line of questioning as being irrelevant and involving hearsay. In sustaining the objection the trial court commented as follows:

"[W]e are going to get into more and more irrelevancies and we are going to forget what we are trying to do here is determine what, if anything, Mr. McCarver has to do with what's charged against him here on the 26th of November that he possessed amphetamines."

The judge suggested that the inquiry cease before "we forget what case we are trying".

After the testimony of the witnesses for the prosecution had been taken, the prosecutor sought admission of the vial of marijuana and pipe into evidence. Defense counsel objected to the admission. After sustaining the objection to admission of the pipe, the trial court addressed the jury and informed them that the vial before him contained marijuana. He told the jury that defendant was not charged with possession of marijuana but that defendant's possession of the substance could be used by them in deciding whether defendant knew that the pills he possessed were amphetamines and whether he knew that it was illegal to possess them. The judge carefully advised the jury of the limited purpose for which the marijuana was being admitted.

It is clear from these facts that the jury was faced, on more than one occasion during the trial, with evidence that defendant had engaged in other illegal conduct before and at the time of the charged offense. The legal proposition applicable to this appeal was recently restated in *People v Spillman,* 63 Mich App 256, 258–259; 234 NW2d 475 (1975):

"Evidence tending to show that the defendant committed crimes other than those charged is generally inadmissible 'because it has been decided that whatever probative value such evidence has is outweighed by the disadvantage of diverting the trier of fact from an objective appraisal of defendant's guilt or innocence'. *People v DerMartzex,* 390 Mich 410, 413; 213 NW2d 97 (1973). In other words:

" 'This rule of law guards against convicting an accused person because he is a bad man. Barring such evidence prevents the trier of fact from inferring that the accused person is guilty of the charged offense because he has committed other similar acts or crimes.' *People v Matthews,* 17 Mich App 48, 52; 169 NW2d 138 (1969)."

The primary issue is whether the fact that defendant was in possession of marijuana when the amphetamines were discovered was properly admitted into evidence. The prosecutor points to the statutory exception to the general rule of inadmissibility as authorizing the admission of the marijuana to show that defendant knew he had possession of a controlled substance:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant." MCLA 768.27; MSA 28.1050.

This statute has been interpreted as permitting the introduction of evidence of a pending narcotics

charge against a defendant who, charged with possession of heroin with intent to deliver, testified that he was not familiar with narcotics and didn't know the contents of the package he delivered. *People v Belen Johnson,* 62 Mich App 63, 73; 233 NW2d 188 (1975). For evidence to be properly admissible under the statute, however, three criteria must be met:

1. Defendant's motive, intent, knowledge, etc. must be material to the case;

2. The evidence offered must be of a "like act";

3. The probative value of the evidence must outweigh the attendant prejudice to the defendant. See *People v Spillman, supra,* 259–260.

In this case the first standard is met; knowledge of the proscribed nature of the controlled substance is certainly material to the case. *People v Gould,* 61 Mich App 614, 620; 233 NW2d 109 (1975). The proffered evidence in this case, however, does not meet the remaining two criteria. Defendant was charged with the felony of possession of amphetamines. The proffered evidence indicated that defendant may have been guilty of the misdemeanor of possession of marijuana. A long discourse at this point on the difference in the degree of evil society associates with the possession of marijuana as opposed to the possession of amphetamines is not necessary. The law treats the two crimes in significantly different ways. MCLA 335.341(4)(b); MSA 18.1070(41)(b), MCLA 335.341(4)(d); MSA 18.1070(41)(4)(d). Obviously, both offenses consist of possession of a controlled substance, but they are not sufficiently alike to permit evidence of one to be admissible under the statute in a prosecution for the other. Significantly accentuating the error in this case is the fact that the trial judge twice erroneously instructed the

jury that possession of marijuana was an offense punishable to the same extent as possession of amphetamines.

The third criterion for admitting evidence of other similar offenses under the statute was also not met.

"[E]ven if the evidence meets the statutory requirements for admissibility, it still may be unacceptable if it is unduly prejudicial, insufficiently probative, or unnecessary in light of the other evidence." *People v Spillman, supra,* 260.

The proposition that the fact that one has possessed marijuana tends to prove that he knew that the possession of amphetamines was proscribed or that he knew that what he possessed *was* amphetamines is tentaive at best. *Cf. People v Belen Johnson, supra.* But even assuming that the other offense tended to prove an element of the charged offense, the probative value of the evidence that defendant possessed marijuana clearly was outweighed by the prejudice the evidence caused defendant.[1] This is particularly evident when consid-

---

[1] In a case in which the defendant was convicted of selling LSD, the Supreme Court of Arkansas held that the trial court erred in introducing evidence that defendant had possessed and sold marijuana:

"In the case at bar the issue for the jury was whether Sweatt [the defendant] had sold LSD to Robbie White. Proof that Sweatt had sold marijuana on other occasions had no relevancy except to show that Sweatt had dealt in drugs before and hence was likely to have done so again. That is precisely the type of proof that must be excluded. If Sweatt was guilty of other crimes, then, as we said in *[Alford v State,* 223 Ark 330; 266 SW2d 804 (1954)], 'each may be examined separately in a court of law, and punishment may be imposed for those established with the required certainty. In this way alone can we avoid the elements of unfair surprise and undue prejudice that necessarily attend trial by accusation * * * '." *Sweatt v State,* 251 Ark 650; 473 SW2d 913, 914 (1971).

The State of Washington Court of Appeals has held that it was error for the prosecutor to introduce evidence that the defendant had also possessed marijuana and amphetamines in a prosecution for possession of LSD. In so ruling, the Court noted that the introduction

ered with the other testimony characterizing the
defendant as a convicted felon and associating him
with criminal activity in general. Defendant was
charged with being in possession of amphetamines,
nothing more, but the trial became so involved
with allegations of prior and contemporaneous
wrongdoing on defendant's part that it became
necessary for the trial judge to remark that "we
are going to forget what we are trying to do here".
The trial court abused its discretion in admitting
the evidence.

Reversed and remanded for a new trial.

R. B. BURNS, P. J., concurred.

D. E. HOLBROOK, J. *(dissenting)*. The majority
holds that evidence of possession of marijuana is
not admissible in a prosecution for possession of
amphetamines when the evidence showed posses-
sion of both drugs at the same time. With such a
conclusion, this writer cannot concur.

In the instant case, agents of the United States
Treasury Department, together with members of
the sheriff's department, requested and received a
Federal search warrant to search defendant's resi-
dence for firearms and narcotics. A search of
defendant's home disclosed bags of amphetamines,
a bottle containing the same type of ampheta-
mines,[1] a vial containing marijuana and a pipe
containing marijuana. Defendant maintained that

---

of evidence of other similar offenses is not permitted as "its effect
would be to generate heat instead of diffusing light" and such evi-
dence was compared to the "minute peg of relevancy" which is
"entirely obscured by the dirty linen hung upon it". *State v Portrey,* 6
Wash App 380; 492 P2d 1050 (1972), quoting from *State v Goebel,* 36
Wash 2d 367; 218 P2d 300 (1950).

[1] An expert for the prosecution testified that the pills contained
amphetamines and caffeine and were distinguishable from ordinary
diet pills. In addition, there were no pharmaceutical markings on the
tablets.

the pills were indeed his, but that he purchased them to control a weight problem. Defendant further maintained that he lacked scienter to be convicted for possession of amphetamines, apparently on the basis that he did not know of the composition of the pills and did not know of their illegality. Defendant produced several witnesses to corroborate his story and they generally indicated that they did not know defendant to use drugs.

Defendant was charged with possession of amphetamines, MCLA 335.341(4)(b); MSA 18.1070(41)(4)(b). The prosecution sought to introduce the marijuana found in defendant's possession. The trial court admitted the marijuana for a limited purpose and cautioned the jury as to its use. Possession of marijuana is also a crime, although a misdemeanor, MCLA 335.341(4)(d); MSA 18.1070(41)(4)(d). We should not ignore that the penalties for both these crimes are provided for in the same act, the Controlled Substances Act of 1971, 1971 PA 196. Obviously, the Legislature decided that possession of amphetamines was the more serious crime. Nevertheless, the act is aimed at the same violation in both instances, possession of a controlled substance, *i.e.*, drugs. We cannot ignore the fact that the distributor of such "goods" often deals in a variety of illicit drugs, ranging from marijuana to amphetamines to cocaine to heroin (to name just a few). Similarly, the user is often a user of a variety of narcotics. We do recognize the fact that there are large numbers of people in this country who use or have used only marijuana. Nevertheless, we can take notice of the fact that marijuana is often transported and distributed along the same underworld networks of distribution as harder drugs. The person who uses only marijuana must normally deal directly or

indirectly with those distributing a variety of controlled substances. When one in possession of a large quantity of pills which are unblemished by pharmaceutical markings, is also in possession of marijuana at the same time, a strong inference arises as to his knowledge of the nature of the pills in his possession. To deny such inference is to close our eyes to the cold hard facts. Possession of one type of drug which is so apparently illegal as marijuana is highly relevant in showing that the possessor has knowledge of the illegality of another not so apparently illegal drug, herein, amphetamines.

The majority correctly cites MCLA 768.27; MSA 28.1050, as authorizing the introduction of evidence of other crimes in certain limited instances. They also cite *People v Belen Johnson,* 62 Mich App 63; 233 NW2d 188 (1975), as authorizing introduction of a pending narcotics charge in a prosecution for possession of heroin with intent to deliver. The majority opinion maintains, however, that the instant case is distinguishable and that the criteria announced in *People v Spillman,* 63 Mich App 256; 234 NW2d 475 (1975), have not been met in the instant case so as to justify admission of the evidence of the marijuana possession in the instant case.

The majority agrees that the first criterion set out in *Spillman* is met. Knowledge of the proscribed nature of the controlled substance is clearly material to the case, *People v Gould,* 61 Mich App 614; 233 NW2d 109 (1975). Furthermore, this was clearly the crucial issue herein and the one on which defendant based his defense. Therefore, evidence which tended to prove or disprove this element was indeed important.

The second criterion announced in *Spillman* was

that the evidence offered must be of a "like act". The majority abruptly dismisses possession of marijuana as not sufficiently akin to possession of amphetamines as to justify its admission. The introductory comments in this opinion indicate a strong belief to the contrary. One in possession of marijuana is certainly not a "junkie" nor should he be subject to the severe penalties imposed for possession of hard drugs. Obviously, society, in its apparent wisdom, has deemed the gravity of harm derived from possession of marijuana to be much less than that derived from possession of hard drugs. Nevertheless, the possessor has entered the illegal world involving drug markets. The fact that the person uses marijuana much to the same extent as many people use (or misuse) alcohol is often asserted as a rationale for only imposing minor punishment. Nevertheless, possession is illegal and our concern is not with the severity of punishment for possession of drugs, nor with the rationales for those who use it, nor even with the facts tending to prove defendant's dependence or lack thereof on drugs. Our concern should be whether evidence of possession of marijuana, which occurred at the same time as possession of amphetamines, is sufficiently relevant to constitute such possession a "like act" for purposes of admission in the instant case. The fact that intent and knowledge were so crucial in the instant case, and that possession of both drugs occurred at the same time, have such a high degree of relevance as to constitute such possession a "like act" for purposes of admissibility of this evidence.

The last standard which must be met, is whether the evidence is sufficiently probative to outweigh its prejudicial value. The majority has taken an approach which is too standardized, and

has failed to note the crucial facts in the instant
case. The majority's discussion cites cases where
evidence of other convictions or crimes were intro-
duced in a separate offense. In *Spillman and Belen
Johnson,* the other offenses were offenses which
occurred at a distinctly separate time and place. In
those instances, the threat of *People v Der-
Martzex,* 390 Mich 410, 413; 213 NW2d 97, 99
(1973), becomes real, that is, the threat of convict-
ing the defendant merely because he is a "bad
man". Barring evidence of prior, or otherwise
separate and distinct crimes, prevents a jury from
inferring that defendant must have committed this
crime because he has broken the law before. *Peo-
ple v Matthews,* 17 Mich App 48; 169 NW2d 138
(1969). That threat of confusion is not present
here. Defendant was in possession of two illegal
drugs at the same time and place. Defendant
denied knowledge of the illegal nature of the
amphetamines, possession of which is a felony.
Defendant was not charged with the misdemeanor
offense, possession of marijuana. Nevertheless,
where defendant possessed both drugs at the same
time and denies knowledge of the illegal character
of the drugs, possession of the marijuana is highly
relevant to prove defendant's knowledge of the
amphetamines' illegality. In *Spillman,* the Court
expressly noted that intent was not an important
issue in that case. *People v Spillman, supra,* 261;
234 NW2d at 477. In *Belen Johnson, supra,* 73–74;
233 NW2d at 194, the Court expressly noted that:

"Defendant's defense was based upon a lack of knowl-
edge as to the nature of the substance transferred.
MCLA 768.27; MSA 28.1050, provides a statutory excep-
tion to the general rule excluding evidence of similar
acts or crimes. Thus the *identical* evidence which was
properly excluded in the first instance was later clearly

admissible to rebut defendant's contention that he was not guilty of the crime because he didn't know the nature of the package he delivered. The trial judge properly exercised his discretion in finding that the same testimony became material upon introduction of defendant's exculpatory testimony. Nor can we say that the evidence was so prejudicial to the fact-finding process as to outweigh its probative value. *People v Der-Martzex, supra, People v Oliphant,* 52 Mich App 242; 217 NW2d 141 (1974), *lv granted,* 393 Mich 780 (1974)." (Emphasis in original.)

Certainly there is prejudice to defendant by introduction of such evidence, the very probative nature of this evidence is highly prejudicial to defendant because it bears so heavily on his knowledge of the illegality of his acts. To deny admission because of the prejudicial nature of the evidence, herein its probative value, is to penalize the prosecution for too clearly presenting its case against the defendant.

In addition to the statutory allowance of the introduction of this evidence of "another" crime, there appears to be a separate rationale for the introduction of this evidence. This evidence was, in reality, part of the res gestae of this offense. As mentioned, the majority denied admission of this evidence because of the failure to meet the criterion necessary as an "other" offense. However, the facts clearly indicate that defendant was found in possession of these drugs at the same time and place. This writer might concur with the majority had the prosecution attempted to offer evidence as to defendant's possession of marijuana on some other occasion, but where possession of the marijuana occurred at the same time and place, such relevant evidence should not be excluded. In the instant case, testimony indicated that defendant was in possession of marijuana. Later the mari-

juana was introduced for a limited purpose and
the jury was properly instructed as to this limited
purpose. This is part and parcel of the res gestae.
The Supreme Court held long ago:

> " 'No inflexible rule has ever been and probably never
> can be adopted as to what is a part of the res gestae. It
> must be determined largely in each case by the peculiar
> facts and circumstances incident thereto; but it may be
> stated as a fixed rule that, included in the res gestae
> are the facts which so illustrate and characterize the
> principal fact as to constitute the whole one transac-
> tion, and render the latter necessary to exhibit the
> former in its proper effect.' *Chicago & Erie Ry Co v
> Cummings,* 24 Ind App 192, 209 (53 NE 1026, 1031).
>
> " 'And as long as the transaction continues, so long
> do acts and deeds emanating from it become part of it,
> so that, describing it in a court of justice, they can be
> detailed. * * * *Territory v Clayton,* 8 Mont 1 (19 Pac
> 293, 297).' " *People v Kayne,* 268 Mich 186, 192; 255
> NW 758 (1934).

See also *State v Rand,* 238 Iowa 250; 25 NW2d 800
(1947).[2] Since the decision in *Kayne,* our Court has
made it clear that facts within the res gestae are

[2] The Court in *Rand* notes:

"In *State v Dunne,* 234 Iowa 1185, 1195; 15 NW2d 296, 301,
speaking by Justice Garfield, we said: 'While it is said to be a general
rule that evidence is not receivable of a crime not charged in the
indictment, there are well recognized exceptions to the rule. Evidence
of another offense is admissible where it is so related to the offense
charged that proof of the former tends to establish the latter, * * * .
Evidence otherwise competent to prove some fact material to the
crime charged is not inadmissible because it tends to prove defendant
guilty of another crime.' We have repeatedly held that 'Where the
acts are all so closely related, in point of time and place, and so
intimately associated with each other that they form one continuous
transaction, the whole transaction may be shown.' *State v Robinson,*
170 Iowa 267, 276; 152 NW 590, 593. * * * In *State v Anderson,* 216
Iowa 887, 892; 247 NW 306, the defendant was arrested for transport-
ing intoxicating liquors. Testimony was admitted that a loaded thirty-
eight caliber revolver was found beside defendant on the seat of the
automobile. It was held admissible as part of the res gestae." *State v
Rand,* 238 Iowa 250, 268–269; 25 NW2d 800, 809–810 (1947).

admissible. *People v McPherson,* 38 Mich App 534;
197 NW2d 173 (1972), *People v Behm,* 45 Mich
App 614; 207 NW2d 200 (1973), *People v Gould,* 61
Mich App 614; 233 NW2d 109 (1975). In *People v
Koehler,* 54 Mich App 624; 221 NW2d 398 (1974),
the defendant, who was therein charged with de-
livery of heroin and delivery of LSD, argued that
it was reversible error to introduce testimony as to
sale of PCP. The Court replied:

"[D]efendant's showing of the brown tablets to Officer
Huston, his statement that these tablets were PCP, and
his further remark that he could not sell any of these
to Huston because he was holding them for another,
constituted a vital portion of the res gestae of the crime
and were properly put before the jury as an integral
portion of the entire transaction." *Koehler, supra,* 635;
221 NW2d at 403.

In *People v Gould, supra,* the Court noted:

"In the instant case, the testimony concerning the
jars of lactose and dextrose in defendant's bedroom and
the testimony as to the street value of cocaine and
marijuana, taken together, raised by implication the
possibility that defendant sold drugs. This would be a
criminal offense apart from the ones with which he was
charged, since those involved possession only. However,
the testimony relating to the lactose and dextrose jars
obviously also describes part of the res gestae of the
crimes charged in the instant case. More importantly,
this testimony has a direct bearing on the intent which
is an element of possession of controlled substances—
that is, the exercise of control or the right to exercise
control over the controlled substance. *People v Stewart,
supra* [52 Mich App 477; 217 NW2d 894 (1974)]." *People
v Gould, supra,* 623–624; 233 NW2d at 114.

In the instant case, police officers pursuant to a
proper search warrant searched defendant's resi-

dence and found quantities of amphetamines and marijuana. Defendant was charged with the felony of possession of amphetamines. He denied knowledge of the illegality. Testimony concerning possession of marijuana, and introduction of the marijuana itself, was material and relevant in proving defendant's knowledge of the illegality of the amphetamines. It was part of one transaction involving the criminal conduct of the defendant and was therefore admissible as part of the res gestae.

Testimony of the witnesses for the prosecution indicated defendant was in possession of this marijuana. After this testimony had been taken, apparently without objection, the prosecution sought admission of the marijuana.[3] Defendant then objected to the admission. The trial court addressed the jury and instructed them that defendant was not charged with possession of marijuana, but that defendant's possession of the substance could be used by them in deciding whether defendant knew that the pills he possessed were amphetamines and whether he knew it was illegal to possess them. Thereafter, defendant, through counsel, indicated his approval of the careful instruction as to the limited purpose for which the marijuana was being admitted.[4] Failure to object limits our

_____

[3] The prosecution correctly explained the admissibility of the marijuana:

"Your honor, with respect to exhibits 4 and 5, we are not trying to convict Mr. McCarver of possession of marijuana. I don't intend to introduce it for that purpose. However, the proof the prosecution is showing is he did knowingly possess amphetamines. Both amphetamines and marijuana are under the controlled substance law. They both have to go to knowledge and intent to violate the controlled substance law. That is also part of the res gestae, part of which was seized. That is the purpose of which it is being introduced. I submit that is sufficient at this time for their admission."

[4] The following discussion occurred after the trial judge explained the limited purpose for which he admitted the marijuana:

"*The Court:* Does counsel wish anything, any further instructions on that point, or are you satisfied?

review of this question and absent manifest injustice we must affirm. The majority apparently finds such an abuse of discretion herein as to allow reversal, in spite of the fact that defendant failed to object, and had even approved the admission after a proper cautionary instruction. This writer cannot agree with such a ruling and, therefore, must respectfully dissent, and vote for affirmance.

*"Miss Zack: [assistant prosecuting attorney]* I'm satisfied.

*"Mr. Kosick: [defense attorney]* I'm satisfied with the precautionary instructions.

*"The Court:* 4 [the marijuana] is admitted and over your objections, sir. Do you wish to maintain your objection on 4?

*"Mr. Kosick:* No.

*"The Court:* You are withdrawing on 4?

*"Mr. Kosick:* Yes.

*"The Court:* It's admitted for these purposes only.

*"Mr. Kosick:* Yes, for that limited purpose.

*"The Court:* Fine. I'm admitting it then for that purpose and without objection, just solely for that purpose."