ROBERTS v CITY OF JACKSON CIVIL SERVICE BOARD

1. Labor Relations—Municipal Corporations—Police Officers—
   Discharge—Marijuana—Youthful Indiscretion.

   A police officer should not be subject to discharge because of a
   youthful indiscretion of occasionally smoking marijuana.

2. Constitutional Law—First Amendment—Municipal Corpora-
   tions—Police Officers—Beliefs.

   A police force may dictate an officer's conduct and actions, but it
   may not tell an officer what he may or may not believe; the
   First Amendment will not tolerate such an infringement on the
   right to believe and the right to speak those beliefs when asked
   by a superior (US Const, Am I).

3. Labor Relations—Discharge—Polygraph Examinations—Lie
   Detector Tests.

   An employer or agent shall not discharge an employee solely
   because of an alleged or actual opinion that the employee did
   not tell the truth during a polygraph examination, lie detector
   test, or similar test (MCLA 338.1726[2]; MSA 18.186[26][2]).

4. Labor Relations—Discharge—Municipal Corporations—Police
   —Employment Questionnaire—Falsification—Polygraph
   Test.

   Discharge of a police officer because of intentional falsification of
   an employment questionnaire was improper where (1) a poly-
   graph test which the officer was coerced into taking was imper-
   missibly relied upon to support the discharge and (2) the record

---

References for Points in Headnotes

[1–5] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
   Political Subdivisions §§ 245, 316, 318.

   70 Am Jur 2d, Sheriffs, Police and Constables §§ 14–16.

[2] 16 Am Jur 2d, Constitutional Law §§ 341, 342.

   The Supreme Court and freedom of speech and press. 2 L Ed 2d
   1706.

[3, 4] 29 Am Jur 2d, Evidence § 831.

   Physiological or psychological truth and deception tests. 23 ALR2d
   1306.

[4, 5] 53 Am Jur 2d, Master and Servant §§ 45, 49, 54.

was insufficient to support the finding of intentional falsification.

5. LABOR RELATIONS—EMPLOYMENT APPLICATIONS—FALSIFICATION—
    MARIJUANA—OCCASIONAL USER.

Failure of an applicant to indicate on an employment application that he had smoked marijuana on three occasions did not result in wilful falsification of a question which asked, in effect, if the applicant was or had been a "user" of marijuana or narcotics.

Appeal from Jackson, Charles J. Falahee, J. Submitted February 8, 1977, at Lansing. (Docket No. 27636.) Decided May 16, 1977. Leave to appeal applied for.

Complaint by Carl D. Roberts against the Civil Service Board of the City of Jackson for an order reinstating him as a police officer and for back pay. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Gergely, Foley & Scott, P. C.,* for plaintiff.

*Roland T. Baumann, II,* for defendant.

Before: D. E. HOLBROOK, P. J., and R. B. BURNS and M. F. CAVANAGH, JJ.

D. E. HOLBROOK, P. J. After full review of the record, we are convinced the plaintiff was improperly removed from his job, and quite possibly from his chosen career, for reasons unrelated to his qualifications or the performance of his duties as a police officer. We find plaintiff's discharge was not supported on the record and plaintiff was coerced into undergoing a polygraph examination which improperly resulted in the decision to discharge him.

The record in this case reveals that plaintiff was officially charged with falsification of an employment questionnaire. Plaintiff was accused of falsif-

ying the following question, number 71: "Do you use or have you ever used narcotics, marijuana, barbiturates, sleeping pills or any form of 'pep' or depressant drugs?" This charge was the result of hearsay allegations made by way of word of mouth from private citizens to the effect that plaintiff was a "user" of narcotics, both before and after he became a policeman. Investigation by the department revealed that the charges were totally unsubstantiated. Plaintiff did freely admit that he had "puffed" or "smoked" a marijuana cigarette on three occasions during his lifetime, all prior to his employment as a police officer. Plaintiff testified that on the basis of these three contacts with marijuana he determined that he was not a narcotics "user" and answered the question accordingly.

A review of the record indicates that charges regarding plaintiff's use of narcotics while on the force were unsubstantiated. Hearsay allegations concerning plaintiff's "use" of narcotics, having as their source a nonfriend of plaintiff's, have cost plaintiff his job and clouded his career.[1] Plaintiff testified that he understood "use" to mean something continuing, a practice or habit. There is certainly support for such an interpretation. See Webster's Third International Dictionary, p 2523 (1965), Black's Law Dictionary, p 1710 (4th ed, 1951), 43A Words and Phrases, p 248, *et seq.*[2] The

---

[1] The initial complaint was at least third or fourth hand hearsay which apparently was blown out of proportion. The original source was plaintiff's brother's fiance who was engaged in a personal feud with plaintiff. This feud apparently arose out of an incident which occurred while plaintiff, his brother and this woman shared an apartment. This was prior to the time that plaintiff joined the police force. Plaintiff apparently came home one night to find a pot party. Plaintiff asked, and told, everyone to leave and while he was in the process of escorting people out, he was offered and puffed on a marijuana cigarette. This was one of the three occasions plaintiff had earlier admitted smoking marijuana.

[2] One of the definitions of use presented in Webster's includes the

police chief did testify that plaintiff had told him that he was afraid to indicate his minor contact with marijuana because he felt he would not be hired if he did. The chief also indicated that this fear was not unfounded. Nevertheless, we find the record evidence totally insufficient to support a finding of intentional falsification of an employment record. See *Sponick v Detroit Police Department,* 49 Mich App 162, 202–206; 211 NW2d 674 (1973).

Were we to similarly treat others who, if known, have on occasion in their youth smoked marijuana, illegally drank liquor, either during prohibition or while under age or in after-hours situations, engaged in an illegal Saturday night poker game, or even participated in an illegal lottery, the ranks of the police force and other important public service groups might well be significantly reduced. This is not to condone such practice,[3] for these actions are illegal. The Legislature has considered the problem and if one is apprehended and convicted he must pay the price. Such actions are not condoned even if one is not charged. Nevertheless, such actions are often youthful indiscretions and usually should be considered as such. A youthful indiscretion is often excused when considering moral fitness for the practice of law.[4] Should this police officer, who defendant readily admits is a well-qualified and very competent officer, be subject to discharge and possible termination of a

following: "to observe or follow as a custom * * * to make familiar by repeated or continued practice or experience". Webster's Third Dictionary, at 2523 (1965).

[3] *See* this writer's dissent in *People v McCarver,* 72 Mich App 311, 320; 249 NW2d 403 (1976).

[4] *See Schware v Board of Bar Examiners of State of New Mexico,* 353 US 232; 77 S Ct 752; 1 L Ed 2d 796; 64 ALR2d 288 (1957), Anno, *Good moral character of applicant as requisite for admission to bar,* 64 ALR2d 301.

promising career because of this youthful indiscretion? We think not.

Plaintiff admitted and testified that he was not in agreement with the severity of Michigan's marijuana laws. Plaintiff felt that marijuana was no more harmful than alcohol. It is true that alcoholism is America's number one drug problem today. Plaintiff's superiors apparently disagreed with plaintiff's view. This is their prerogative, but it also appears that this may have been an underlying factor for plaintiff's dismissal. The chief of police testified as follows:

"I also questioned him regarding his feelings about the marijuana law and he informed me at that time that he felt the marijuana law was too severe, that marijuana really should not be illegal because it was no more than alcohol and this again I informed him that this is his personal feelings and was fine for a citizen but as a police officer, I thought it would be detrimental to his performance in the future and for the good of the department I had to recommend dismissal."

There is no claim that plaintiff's feelings interfered with enforcing Michigan's laws. The police force may dictate an officer's conduct and actions, but no one, including the police force, has any business telling an individual what he may or may not believe. Any penalty on the absolute right to believe is unconstitutional. The First Amendment will not tolerate such an infringement on the right to believe and the right to speak those beliefs when asked by a superior.

In addition, polygraph results were impermissibly relied upon herein in making the decision to discharge plaintiff. Plaintiff admitted prior to taking the polygraph examination that he had smoked marijuana on several occasions. At the hearing the police chief, echoing defendant's arguments on appeal, maintained that plaintiff was

fired because he falsified his employment application by not admitting "use" of marijuana. Defendant contends that the extent of use is not relevant while at the same time denying that the polygraph examination affected the termination decision. However, plaintiff was not discharged until after the polygraph examination. MCLA 338.1726(2); MSA 18.186(26)(2) provides: "An employer or agent shall not discharge an employee solely because of an alleged or actual opinion that the employee did not tell the truth during a polygraph examination, lie detector test, or similar test." See *People v Liddell*, 63 Mich App 491, 495; 234 NW2d 669 (1975). If the polygraph examination was not the basis for this discharge, why was plaintiff not terminated earlier when he had already admitted smoking marijuana? Furthermore, the polygraph was considered by the Civil Service Commission at the review hearing when defendant's attorney offered the results "not as an exhibit that I am introducing, I am offering it to assist the board".

Plaintiff had no choice but to take the polygraph. The chief testified that he had told plaintiff "if you want to resign now, I want your resignation and if you want 24 hours to think about the polygraph, you take the polygraph test". Later the chief admitted that "he [plaintiff] had no alternative other than to take the test" yet the chief, and the board, maintained that the polygraph was voluntary and did not affect their decision. The chief also testified, however, that this voluntary polygraph was the final determiner in his recommendation of dismissal. There is no doubt that the polygraph was an important, and probably the sole, factor in the decision to terminate plaintiff. We suspect that plaintiff may have been terminated because of the unsubstantiated charges of use of marijuana while a member of the police force which the department felt were supported by

the polygraph results.[5] Such charges, if proven, could very well result in severe disciplinary action. However, such charges when unsubstantiated cannot be a basis for termination of plaintiff's employment and career.

Plaintiff's failure to indicate on his employment application that he had smoked marijuana on three occasions prior to his application did not result in wilful falsification of a question which asked, in effect, if the applicant was or had been a "user" of marijuana or narcotics. Furthermore, use of a polygraph as a basis for the decision to dismiss plaintiff was not permitted.

This opinion does not in any way indicate approval of marijuana use, on the contrary its use is strongly disapproved of. However, we find plaintiff's discharge to have been improper and accordingly reverse and remand for entry of an appropriate judgment.

---

[5] Plaintiff would have us believe that he was in reality discharged to avoid embarrassment to the department, because he had in fact tried marijuana prior to joining the force and had expressed his beliefs as to the propriety of marijuana laws. Plaintiff contends that defendant began this investigation to prove that plaintiff was still using marijuana and other drugs and being unable to substantiate such serious charges has fallen back on the falsification issue to justify their decision to terminate plaintiff and avoid embarrassment for the department. We need not comment on such an inference when we find the falsification issue totally unsupported by the record.