PEOPLE v BELEN JOHNSON

1. CRIMINAL LAW—DOUBLE JEOPARDY—SECOND TRIAL—FAILURE TO OBJECT—PROCEDURAL DEFAULT—WAIVER.

A defendant's failure to object, on double jeopardy grounds, to initiation of his second trial on the same charge is not fatal; absent a deliberate act of the defendant, a procedural default in failing to raise the issue of former jeopardy at the proper time does not result in the waiver of that right.

2. CRIMINAL LAW—DOUBLE JEOPARDY—REPROSECUTION—MANIFEST NECESSITY—CONSENT.

The double jeopardy clause does not bar reprosecution of a defendant where there is a "manifest necessity" for a mistrial or where the defendant consented to the declaration of a mistrial.

3. CONSTITUTIONAL LAW—WAIVER OF RIGHTS.

Waiver of a constitutionally guaranteed right must be made voluntarily, intelligently and knowingly.

4. CRIMINAL LAW—DOUBLE JEOPARDY—MISTRIAL—REPROSECUTION— OVERREACHING.

A defendant who moves for a mistrial is ordinarily assumed to remove any bar to reprosecution even though his motion is necessitated by prosecutorial or judicial error, although a different result may be reached if the error is attributable to prosecutorial or judicial overreaching.

5. ATTORNEY AND CLIENT—CRIMINAL LAW—WAIVER OF RIGHTS.

Some rights are so essential that an attorney cannot waive them for a defendant, such as the right to a jury trial and the right to counsel.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5, 6] 21 Am Jur 2d, Criminal Law §§ 195, 198.
[2, 4] 21 Am Jur 2d, Criminal Law §§ 180, 195, 198.
[7] 21 Am Jur 2d, Criminal Law § 166.
[8–10] 29 Am Jur 2d, Evidence §§ 320, 321, 333.
[11] 75 Am Jur 2d, Trial § 305 *et seq.*
[12] 21 Am Jur 2d, Criminal Law § 525 *et seq.*

6. Constitutional Law—Double Jeopardy—Waiver of Rights—Attorney and Client—Personal Waiver.

The decision by a defense counsel to seek a mistrial is not a decision which can be made only by the defendant personally; defense counsel can waive a defendant's double jeopardy rights under proper circumstances.

7. Criminal Law—Constitutional Law—Double Jeopardy—Witnesses—Res Gestae Witness—Failure to Produce—New Trial.

The double jeopardy clause does not bar the reprosecution of a defendant after a mistrial was declared due to the prosecution's failure to produce a res gestae witness.

8. Criminal Law—Evidence—Similar Acts.

Evidence tending to show that the accused has committed other acts or crimes or has a disposition toward conduct similar to the offense charged is ordinarily inadmissible to prove the charged offense.

9. Criminal Law—Evidence—Other Pending Charges.

Evidence that a defendant accused of possession of heroin with intent to deliver was also involved in another pending narcotics charge was admissible to rebut the defendant's testimony that he did not know the contents of a package he delivered and he had no familiarity with narcotics, where the evidence was not so prejudicial to the fact-finding process as to outweigh its probative value; initial error in permitting a reference to the other pending narcotics charge, before the defendant had testified, was cured where there was no indication defendant was thereby impermissibly coerced into taking the stand and this evidence was properly admitted later in the trial.

10. Criminal Law—Evidence—Other Charges Against Defendant—Harmless Error.

Remedial action by a trial judge in striking a witness's reference to an untried criminal charge against a defendant and instructing the jury to disregard this testimony rendered the initial admission of such testimony harmless error beyond a reasonable doubt.

11. Criminal Law—Prosecutor's Remarks—Witnesses—Credibility—Jury.

A prosecutor's remark characterizing a defendant's testimony as a "sham" was not objectionable; an attorney may state to the jury his belief that a witness is or is not credible where there

are testimonial conflicts and the outcome of the case turns upon which witness the jury believes.

12. CRIMINAL LAW—SENTENCING—ASSUMPTIONS.

Reference to a defendant as a "professional seller of heroin" by a judge in passing sentence was not beyond the scope of permissible inference where the defendant had been found guilty of possession of heroin with intent to deliver and the value of the heroin involved would permit a ready inference that the quantity was not for personal use.

Appeal from Lenawee, Rex B. Martin, J. Submitted Division 2 March 13, 1975, at Lansing. (Docket No. 20166.) Decided June 10, 1975.

Belen B. Johnson, Jr. was convicted of possession of heroin with intent to deliver. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Harvey A. Koselka,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director, and *Lee W. Atkinson,* Special Assistant Attorney General, of counsel), for the people.

*Elizabeth Schwartz,* Assistant State Appellate Defender, for defendant.

Before: DANHOF, P. J. and D. E. HOLBROOK, JR. and O'HARA,* JJ.

O'HARA, J. On October 2, 1973, Belen Johnson, Jr., defendant in this case, was arraigned in Lenawee County Circuit Court on a charge of possession of heroin with intent to deliver in violation of MCLA 335.341(1)(a); MSA 18.1070(41)(1)(a). Defendant was tried before a jury on that charge on

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

November 14 and 15, 1973. That proceeding ended in a mistrial when the prosecution failed to produce an indorsed res gestae witness to the transaction in question and the court held that due diligence had not been exercised in producing that witness. The witness which the prosecutor failed to provide was a confidential informant who had arranged the transfer of heroin in question.

On December 6 and 7, 1973, defendant was retried. Defendant was convicted by a jury of one count of possession of heroin with intent to deliver. On January 30, 1974, defendant was sentenced to serve from 7 to 20 years in prison. He appeals of right.

The defendant first argues that his reprosecution was barred by the double jeopardy clause[1] where the prosecutor did not produce a res gestae witness and defense counsel moved for a mistrial but defendant did not *personally* make an explicit waiver of his double jeopardy rights on the record.

Because this issue raises several subpoints we will discuss them *seriatim.*

The defendant's failure to object to initiation of his second trial on double jeopardy grounds was not fatal. In *People v Bower,* 3 Mich App 585, 589; 143 NW2d 142 (1966), this Court stated:

"The double jeopardy issue was not raised by the defendant's counsel prior to the taking of the plea in the circuit court. But in *Henry v Mississippi,* 379 US 443; 85 S Ct 564; 13 L Ed 2d 408 (1965), the United States Supreme Court announced that it would not find a waiver of a Federal constitutional right solely because of a defendant's counsel's procedural default in timely

[1] *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969), held that the Fifth Amendment double jeopardy provision is applicable to the states through the Fourteenth Amendment. In like manner, the 1963 Constitution, art 1, § 15, precludes a defendant from being twice placed in jeopardy.

raising the question. Now we do not intend this opinion to go beyond *Henry, supra,* but feel constrained to follow that case inasmuch as a Federal constitutional right is involved. Since the proceedings in circuit court terminated in a plea, there can be no question of a waiver based upon 'deliberate choice of strategy.' Under the circumstances, absent a deliberate act of the defendant, the procedural default in failing to raise the issue of former jeopardy at the proper time does not result in the waiver of this right."

See also *People v Hall,* 24 Mich App 509; 180 NW2d 363 (1970), *lv granted,* 391 Mich 786 (1974).

In *People v Grimmett,* 388 Mich 590, 598; 202 NW2d 278 (1972), the Michigan Supreme Court recognized that there were "Two types of situations" where a second trial was permissible as against double jeopardy contentions. The first of these was those situations covered under the rubric of "manifest necessity" and the second classification was in those cases where the defendant consented to the declaration of a mistrial. See also *United States v Jorn,* 400 US 470; 91 S Ct 547; 27 L Ed 2d 543 (1971), and *People v Gardner,* 37 Mich App 520; 195 NW2d 62 (1972).

The mistrial in the instant case, as noted heretofore, was granted under category two, *i.e.,* a termination of the trial pursuant to the request of the defendant.

That the waiver of a constitutionally guaranteed right must be made voluntarily, intelligently and knowingly is undisputed. *Johnson v Zerbst,* 304 US 458; 58 S Ct 1019; 82 L Ed 1461 (1938), *Boykin v Alabama,* 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969), *People v Grimmett, supra.* When a defendant moves for a mistrial he is ordinarily assumed to remove any bar to reprosecution even though his motion is necessitated by prosecutorial or judicial error, although a different result may

be reached if it is attributable to prosecutorial or judicial overreaching. *United States v Jorn, supra.*

Prior to the declaration of a mistrial by the circuit judge, the importance of the confidential informant to defendant's case was stated for the record in the strongest possible terms by defense counsel. Defense counsel asserted he had counted on the informant's presence at trial, and as a result had asked certain questions and opened certain doors which, without the informer's testimony, would be seriously prejudicial to defendant. There then followed this enlightening colloquy between defense counsel and the trial judge:

> "*The Court:* What's your solution?
> "*Mr. Simon:* Mistrial.
> "*The Court:* You moving for a mistrial?
> "*Mr. Simon:* Yes, sir.
>
>          \*    \*    \*
>
> "*[The Court]:* All right, we'll declare a mistrial and set it as an alternate December 6th \* \* \* ".

Incontestably, the record in the instant case clearly manifests the desire of defense counsel to terminate the proceedings and forgo any right defendant might have to proceed to judgment before the involved jury. However, defendant claims that this does not suffice to evidence a waiver of his right not to be twice placed in jeopardy for the same offense. There must, he contends, be an of-record waiver of this right by defendant *himself.* Any purported waiver of defendant's rights not complying with this procedure necessarily must, it is alleged, give way as being inconsistent with applicable case law limitations vis-a-vis waiver of constitutional rights.

The defendant, in effect, attempts to place the

waiver of the double jeopardy bar in the class of rights which may be waived only by defendant and not by his counsel. In *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969), this Court stated that some rights are so essential that an attorney cannot waive them for a defendant. Given as examples of such rights were the right to a jury trial [MCLA 763.3; MSA 28.856, *Patton v United States,* 281 US 276; 50 S Ct 253; 74 L Ed 854 (1930)], and the right to counsel *[Carnley v Cochran,* 369 US 506; 82 S Ct 884; 8 L Ed 2d 70 (1962)]. In *Degraffenreid,* this Court held that the right to have a court suppress illegally seized evidence is not a right which historically has been so completely protected that it can be waived only by the defendant personally. We think that the decision by defense counsel to seek a mistrial falls within the same general category.

Particularly significant, in our view, is certain language found in *People v Grimmett, supra,* which implicitly recognizes that defense counsel can, in fact, waive a defendant's double jeopardy rights under proper circumstances. Witness this excerpt from *Grimmett* at 601:

"Defendant never made any formal motion to discharge the jury. The prosecutor contends that although there was no formal motion, there was an informal motion which allowed defendant to waive this right. However, in view of the fact that defendant's attorney was mistaken in his view of the law, it is obvious that defendant could not consciously waive the right to object to the discharge of the jury. A close reading of the record reveals that defendant's counsel made no motion of any type to discharge the jury, and that the motion to discharge was made by the trial court sua sponte. No waiver can be inferred from the actions of defendant's counsel."

To like effect is certain language contained in the Chief Judge's well-written opinion in *People v Gardner, supra:*

"We do not find it necessary to determine whether the trial judge should have granted a mistrial or cured the error with an instruction, had defendant moved here for a mistrial. It is significant that defendant, unlike defendants [in certain other cited cases], did not move for a mistrial." 37 Mich App at 534.

We also note that in the leading case of *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973), the Supreme Court stated that where the prosecution failed to produce a res gestae witness at trial the remedy in future cases was that a defendant should move at the trial level for a new trial. The Court did not dismiss the charges and did not deem reprosecution barred by the double jeopardy doctrine.[2] It is evident therefore that failure to produce res gestae witnesses will normally result in a new trial and not in a dismissal. Thus double jeopardy did not bar reprosecution in the case at bar.[3]

The next assignment of error which we discuss is thus stated by defendant-appellant:

*"The prosecutor's injection of the fact that appellant was involved in another pending narcotics case, and the prosecutor's subsequent improper questioning of appellant regarding the facts underlying that case, deprived appellant of a fair trial."*

For reasons that will become apparent to the reader this issue requires that we discuss some of

---

[2] We recognize that *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973), does not specifically deal with double jeopardy.

[3] The disposition made of this issue obviates any need to determine whether under the circumstances of the instant case the trial judge would have been warranted in *sua sponte* declaring a mistrial on the ground of "manifest necessity".

the relatively complex factual underpinning of the present case.

During the course of the trial, as part of the people's case in chief, there had been testimony which inculpated both defendant and one Louis Cuellar, a cousin of the defendant. On cross-examination of the officer in charge of the investigation, he testified in response to questions by defense counsel that the narcotics investigation herein was primarily in response to tips concerning alleged heroin traffic in the area. The apparent purpose of defense counsel pursuing this risky line of inquiry was to establish that defendant's involvement was incidental to that of Cuellar's and that he accordingly could not be held culpable for a transaction in which he, in effect, was a mere dupe or innocent agent. Not surprisingly the trial judge was somewhat mystified as to what materiality this line of inquiry had to the charge in the instant case. But defense counsel persisted and he finally elicited from the involved officer an admission that Louis Cuellar had four narcotic sales cases pending at the time of this trial. Only then on redirect examination did the prosecutor ill-advisedly elicit from the same officer the fact that one of those charges involved defendant herein. Defense counsel objected and the trial judge sustained that objection on the ground of lack of materiality. The jury was instructed to disregard the question and the answer. At the close of the prosecution's case, defense counsel moved for a mistrial on the grounds of prejudice due to the above-cited exchange. The trial judge denied the motion.

Closely related to the foregoing is what shortly transpired on direct examination of defendant during his case in chief. In simple substance it was defendant's contention that he knew nothing

about the narcotic drug he delivered to the under-
cover police and that he, relying on Cuellar's
assurances, believed the package containing the
heroin was part of a practical joke Cuellar was
playing on the persons to whom delivery of the
package was made. The defendant was specifically
asked by his attorney if he ever had anything to
do with narcotics. And, defendant said that he
never had, that he had never seen heroin and that
he didn't know what it looked like.

The prosecutor, in his cross-examination of de-
fendant, sought to discredit defendant's testimony
that he never had any involvement with narcotics
and that the entire episode giving rise to the
criminal charge was a result of defendant's na-
ivete or good faith belief that a practical joke was
being perpetrated by Cuellar. With this in mind,
the people examined defendant as to whether he
had had any further contact the next day with the
same persons to whom the earlier narcotics sale
had been made. This to the end that it might be
shown that defendant had, in fact, made another
sale of a controlled substance on the following day.
Defendant claimed he did not recollect seeing
either of the persons on the day in question.

Defense counsel did not object to this line of
questioning but at the conclusion of defendant's
case moved for a mistrial on the basis of the
allegedly improper introduction of prejudicial evi-
dence during the prosecutor's cross-examination of
the defendant. The motion was denied as being
without merit since testimony as to the second
alleged sale could be admitted in response to de-
fendant's own testimony on the witness stand.

The defendant is correct in stating that evidence
tending to show the accused has committed other
acts or crimes or has a disposition toward conduct

similar to the offense charged is ordinarily inadmissible to prove the charged offense because it diverts the trier of fact from an unbiased evaluation of defendant's guilt or innocence. *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973). Defendant also correctly points out that the testimony was immaterial and erroneous which the people introduced to rebut defendant's thesis that the entire onus should fall on Cuellar, since the trial judge excluded the testimony defense counsel elicited relative to the other pending charges against Cuellar. In legal effect there was nothing to controvert since the trial judge had ruled defense counsel's line of inquiry was not material to the issues in the instant case. The query then becomes whether the prejudice arising from the comments was so overwhelming that it was beyond possible cure.

This question cannot be answered without a careful consideration of the rather unusual circumstances involved in the present case. While it was error under the circumstances for the prosecutor to bring to the jury's attention another pending charge involving the same kind of criminal conduct, we can hardly fail to take notice of the fact that defendant subsequently took the witness stand and testified as to his complete lack of familiarity with narcotics. Defendant's defense was based upon a lack of knowledge as to the nature of the substance transferred. MCLA 768.27; MSA 28.1050, provides a statutory exception to the general rule excluding evidence of similar acts or crimes. Thus the *identical* evidence which was properly excluded in the first instance was later clearly admissible to rebut defendant's contention that he was not guilty of the crime because he didn't know the nature of the package he deliv-

ered. The trial judge properly exercised his discretion in finding that the same testimony became material upon introduction of defendant's exculpatory testimony. Nor can we say that the evidence was so prejudicial to the fact-finding process as to outweigh its probative value. *People v DerMartzex, supra, People v Oliphant,* 52 Mich App 242; 217 NW2d 141 (1974), *lv granted,* 393 Mich 780 (1974). Since the evidence was properly admitted subsequently and there is no indication that defendant was impermissibly coerced into taking the witness stand by the prematurely erroneous reference to an untried charge,[4] we here hold that the initial error was cured so that defendant sustained no real lasting prejudice. See generally, *People v Davis,* 217 Mich 661, 667; 187 NW 390 (1922), and *People v Swann,* 44 Mich App 329, 335; 205 NW2d 281 (1973). We further hold that should our decision be subject to review by the Supreme Court and they not agree as to the curing of the error for the reason stated heretofore that the prompt remedial action by the trial judge in striking the threshhold reference to the untried criminal charge against defendant and instructing the jury to disregard this testimony rendered the eliciting of that testimony harmless error beyond a reasonable doubt.

The next contention of defendant pertains to a

---

[4] The genesis of this whole unfortunate episode was defense counsel's stated desire on cross-examination to show that defendant's participation in the offense was strictly incidental to that of Cuellar who was the moving force behind it all. Hence, the fact that defendant subsequently took the witness stand immediately after the prosecution witness in question, some five transcript pages later on the same day, and testified to facts which permitted the prosecutor to introduce the same evidence which was earlier erroneously adverted to is highly persuasive evidence that it was defendant's intention to take the stand from the outset and to testify in accordance with the strategy reflected in defense counsel's cross-examination of the police officer.

claim that he was denied a fair trial because the prosecutor characterized defendant's whole story as a "sham" in the people's closing argument.

We have carefully examined the closing argument of the prosecutor and we hold that there is no basis for concluding that it is objectionable either because of alleged inflammatory statements or because it was an assertion by the prosecutor of his own personal opinion that appellant was guilty. In *People v Davis,* 57 Mich App 505; 226 NW2d 540 (1975), we recently spoke to this self-same issue and upheld as not erroneous a prosecutor's statements which were similar to those herein discussed. There this Court, citing applicable Supreme Court authority, noted that there is no reason why an attorney may not state to the jury his belief that a witness is or is not credible where there are testimonial conflicts and the outcome of the case turns upon which witnesses the jury believes. See *People v Wirth,* 108 Mich 307; 66 NW 41 (1896).

Finally, defendant raises several allegations of infirmities with respect to the sentence imposed contending among other things that: the trial judge erroneously characterized defendant as a "professional seller of heroin" and sentence was announced without affording appellant a reasonable opportunity to challenge this so-called added charge.

First, defendant's assertion that the trial judge improperly assumed the defendant was involved in other unspecified and unproven sales is without merit in the record. Prior to imposing sentence, the judge specifically stated that he was not considering the charge of sale of heroin on the following day to the same officers. Now as to the reference to defendant as a professional seller of her-

oin, we note that the jury verdict encompassed a finding that defendant possessed heroin with the intent to deliver. This along with the value of the heroin delivered would permit a ready inference that the quantity was not for personal use. Hence the reference to defendant as a professional seller was not beyond the scope of permissible inference. The last contention of defendant is that the defendant did not have an opportunity to advise the court as to possible extenuating circumstances which might bear on the sentencing. We find that there was adequate compliance with GCR 1963, 785.8(2). This assertion is also without merit.

On the totality of the record we find no reversible error.

Affirmed.