PEOPLE v MOCK

Docket No. 47247. Submitted April 9, 1981, at Lansing.—Decided
    August 5, 1981.

Rodney E. Mock was convicted by a jury in Detroit Recorder's
    Court of criminal sexual conduct in the first degree and was
    sentenced, Verne C. Boewe, J. Defendant appeals. *Held:*

1. There is no merit to defendant's argument that his convic-
tion must be reversed because of the fact that during the trial a
police officer testified that the complainant had identified defen-
dant in a corporeal lineup. Although the admission of this
testimony was error, the error does not require reversal be-
cause no objection was made at the trial level, defendant did
not request a curative instruction, and the same fact was
shown by other competent evidence.

2. There is no merit to the argument that the prosecutor
impermissibly vouched for the credibility of a prosecution
witness by informing the jury that the witness was granted
immunity from prosecution in any subsequent trial on charges
of obstructing justice in exchange for his testimony.

3. Defendant's argument that testimony as to his attempts to
induce the victim to drop the charges was erroneously admitted
as testimony of similar acts is also without merit. The testi-

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 372, 373.
    Extrajudicial or pretrial identification of accused, admissibility of
    evidence as to. 71 ALR2d 449.
[2, 7] 5 Am Jur 2d, Appeal and Error § 553.
[3] 5 Am Jur 2d, Appeal and Error §§ 797, 798.
[4] 81 Am Jur 2d, Witnesses § 666.
[5] 29 Am Jur 2d, Evidence § 293.
[6] 5 Am Jur 2d, Appeal and Error § 778.
    81 Am Jur 2d, Witnesses § 610.
[8] 76 Am Jur 2d, Trial §§ 1116, 1122, 1128.
    Accused's right to poll of jury. 49 ALR2d 619.
[9] 76 Am Jur 2d, Trial §§ 1122, 1126.
[10] 76 Am Jur 2d, Trial § 1126.
[11] 76 Am Jur 2d, Trial § 1074.
[12] 76 Am Jur 2d, Trial § 1086.

mony was admitted to show a consciousness of guilt on the part of the defendant.

4. Defendant was not denied a fair trial or the right to confront the witnesses against him by reason of the trial court's denial of his request for a transcript of his first trial in this case. Defendant never requested a transcript. Counsel for a codefendant did request a transcript but that request was untimely and was properly denied. Defendant failed to object to the trial court's handling of the codefendant's request and, there being no manifest injustice, appellate review of the matter is precluded.

5. The prosecution's failure to disclose the fact that a jury verdict form had been marked indicating a not guilty verdict as to defendant prior to a mistrial being declared did not constitute a denial of due process. Although the prosecution should have disclosed the information at the first opportunity, the incident is not an adequate ground for reversal because the form did not constitute a verdict and because defendant was afforded every protection he would have been given if the information had been disclosed immediately.

6. Defendant was not twice placed in jeopardy by reason of the trial court's declaration of a mistrial and failure to ascertain whether a verdict had been reached because there was no valid verdict of acquittal prior to the declaration of a mistrial. The declaration of a mistrial was a proper exercise of discretion due to manifest necessity. Furthermore, defendant consented to the declaration of the mistrial.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — OUT-OF-COURT IDENTIFICATION — RULES OF EVIDENCE.

A witness may testify as to his or her prior identification of an accused but a third party may not testify about another person's out-of-court identification of an accused (MRE 801[d][1]).

2. APPEAL — PRESERVING QUESTION.

An issue is not properly preserved for appellate review unless a proper objection is made in the lower court.

3. EVIDENCE — ERRONEOUS ADMISSION.

The erroneous admission of evidence is harmless error where the same facts are shown by other competent testimony.

4. PROSECUTING ATTORNEYS — WITNESSES — IMMUNITY.

A prosecutor is ordinarily required to disclose, at a defendant's request, the fact that a witness is testifying under a grant of

immunity since such a grant may influence the witness to testify falsely and the jury must be aware of such a factor when judging the credibility of the witness.

5. EVIDENCE — COERCION OF WITNESSES.

Evidence of a defendant's efforts to influence or coerce the witnesses against him is admissible where such activity demonstrates a consciousness of guilt on the part of the defendant.

6. CRIMINAL LAW — TRANSCRIPT.

Refusal to provide a defendant with a transcript of his first trial so that he can use it for impeachment purposes during his retrial is not error requiring reversal where defense counsel fails to request a copy of the transcript until the second trial is in progress.

7. APPEAL — PRESERVING QUESTION — MANIFEST INJUSTICE.

Matters unobjected to at the trial level are not preserved for appellate review absent manifest injustice.

8. JURY — VERDICT.

A jury does not reach a valid verdict until deliberations are over, the result is announced in open court, and no dissent is registered by any of the jurors.

9. JURY — PRELIMINARY VOTES.

Juror votes taken in the jury room prior to the announcement of the verdict in open court are merely preliminary votes and do not constitute a valid verdict.

10. JURY — VERDICT — RECANTING ASSENT.

A juror may recant a previous assent to a verdict at any time prior to his express in-court assent at the polling.

11. CRIMINAL LAW — MISTRIAL — JURY.

A mistrial was appropriate by reason of manifest necessity where the defendant demanded a twelve-person jury and one of the twelve jurors subsequently was unable to continue with jury service.

12. CRIMINAL LAW — MISTRIAL — CONSENT TO MISTRIAL — DOUBLE JEOPARDY.

A defendant's consent to a mistrial obviates the necessity of finding manifest injustice to preclude the attachment of double jeopardy.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy C. Scallen,* Assistant Prosecuting Attorney, for the people.

*Robert E. Slameka,* for defendant on appeal.

Before: Cynar, P.J., and Bronson and D. F. Walsh, JJ.

Cynar, P.J. Defendant was charged with first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2). On April 20, 1979, a Detroit Recorder's Court jury found defendant guilty as charged. On July 21, 1979, defendant was sentenced to five years probation and assessed $1,000 in costs. Defendant appeals as of right.

There is no merit to defendant's argument that his conviction must be reversed because of the fact that during the trial a police officer testified that complainant identified defendant in a corporeal lineup.

It is true that this testimony was offered to prove the truth of the matter asserted and is therefore hearsay. Although MRE 801(d)(1) permits a witness to testify as to his or her prior identification, a third party may not testify about another person's out-of-court identification. *People v Washington,* 84 Mich App 750; 270 NW2d 511 (1978), *People v Sanford,* 402 Mich 460; 265 NW2d 1 (1978). However, the error is not reversible error for two reasons. First, no objection was presented to the lower court and defendant did not request a curative instruction. Absent a proper objection, the issue is not properly preserved for appellate review. *People v Moss,* 397 Mich 69; 243 NW2d 254 (1976).

Second, assuming that an objection had been

made, the erroneous admission would be harmless error because the same fact was shown by other competent testimony. *People v Hoerl,* 88 Mich App 693; 278 NW2d 721 (1979). In the instant case, the complainant positively identified defendant as the man who forced her to have sexual relations and also testified that she had previously identified the defendant in a corporeal lineup. Defendant's conviction may not, therefore, be reversed by reason of the testimony in question. GCR 1963, 529.1.

Defendant next claims that reversible error occurred when a prosecution witness was allowed to testify that defendant had attempted to negotiate an agreement with the complainant whereby she would drop the charges in exchange for money. Furthermore, defendant contends that the prosecutor impermissibly vouched for the credibility of the witness in question by eliciting the fact that the witness had been granted immunity from prosecution in any subsequent trial on charges of obstructing justice arising from the attempted deal should such charges be brought against the defendant.

There is no merit to the argument that the prosecutor impermissibly vouched for the credibility of the witness. Such an error may occur where a prosecutor expresses his personal opinion as to the credibility of a witness, *People v Erb,* 48 Mich App 622, 631-633; 211 NW2d 51 (1973), but nothing of the kind occurred in the instant case.

Defendant's theory is that, by informing the jury that the witness was granted immunity in exchange for his testimony, the prosecution expressed its belief in the veracity of the witness, the supposition being that if the witness was not telling the truth immunity would not have been granted. In fact, the prosecutor is ordinarily re-

quired to disclose, at a defendant's request, the fact that a witness is testifying under a grant of immunity since such a grant may influence him to testify falsely and the jury must be aware of such a factor when judging the credibility of the witness. *People v Atkins,* 397 Mich 163, 173-174; 243 NW2d 292 (1976).

Defendant's argument that testimony as to his attempts to induce the complainant to drop the charges was erroneously admitted is also without merit. Defendant's analysis of the admissibility of such testimony as evidence of similar acts is inapplicable because the evidence was not admitted as evidence of similar acts. Instead, it was admitted under the long-standing case-law doctrine that evidence of a defendant's subsequent efforts to influence or coerce the witnesses against him is admissible where such activity demonstrates a consciousness of guilt on the part of the defendant. *People v Hooper,* 50 Mich App 186, 198-199; 212 NW2d 786 (1973).

Defendant next argues that he was denied a fair trial and was denied the right to confront the witnesses against him by reason of the trial court's denial of his request that he be provided with a transcript of his first trial in the instant case. On April 2, 1978, the first trial held on this matter was declared a mistrial. The trial was rescheduled to start the following day, April 3, 1978. On the fourth day of the second trial, counsel for codefendant made a motion for transcript, which motion was denied.

This claim is without merit because defendant never requested the transcript. An examination of the record reveals that it was codefendant Jones who made the request, which request was properly denied by the trial court because it was untimely,

coming as it did near the end of the second trial. *People v Oliver,* 29 Mich App 402, 404; 185 NW2d 433 (1971). Codefendant Jones made the request because he believed that one of the witnesses gave testimony in the second trial inconsistent with the testimony he had given in the first trial but in fact the testimony was not inconsistent and, even if it had been, it related to a matter which was of no significance to the case.

We disagree with the prosecution's argument that the testimony of the witnesses at the second trial was, in itself, an adequate substitute for a transcript. We find, however, that defendant was not entitled to even a reasonable substitute such as the one available in *Britt v North Carolina,* 404 US 226; 92 S Ct 431; 30 L Ed 2d 400 (1971) (where the court reporter from the first trial was available and prepared to read back testimony from the first trial in the event that inconsistent testimony was given at the second trial). Defendant failed to object to the trial court's handling of his codefendant's request. Such a failure to object precludes appellate review absent manifest injustice. *People v Stinson,* 88 Mich App 672, 674; 278 NW2d 715 (1979). No injustice of any kind is apparent here, and so, even if error were committed, the error would be harmless. GCR 1963, 529.1.

Defendant's final two claims of error arise from the unusual termination of defendant's previous trial in the instant case. That trial was held between March 22 and 30, 1979. The jury began deliberations on Friday, March 30, 1979. That afternoon, the judge received a note from the jury which stated: "Do we have to reach a verdict on both defendants today?" The jury was called back in. The foreman gave the verdict sheet and the evidence involved in the case to the clerk of the

court. On the following Monday, only 11 jurors were available because of a death in the family of one juror. The record indicates that both defendants decided to exercise their rights to have a jury of 12 decide their case. A mistrial was declared with the consent of both defendants. After the jury was discharged, the foreman of the jury handed the verdict forms to the court clerk, who gave the forms to the prosecutor. An "X" was marked on one of the forms, indicating a verdict of not guilty as to defendant Mock. The prosecution admits that this fact was not disclosed immediately upon its discovery, but the information eventually came to the attention of the defense and the trial court. After learning of this indication of a not guilty verdict, the trial court recalled the jurors in the first trial and polled them. One juror stated that she had never voted that defendant Mock was not guilty and that it was her opinion at all times during deliberations that defendant was guilty.

The first of defendant's two claims of error arising from this situation is that the failure by the prosecution to disclose the fact that the jury form indicated a verdict of not guilty as to defendant Mock constituted a denial of due process. Defendant's argument is based on the prosecutor's duty to disclose evidence favorable to a defendant. That duty is not precisely applicable to the instant case because the information in question was not evidence. We do believe, however, that the prosecution should have disclosed the information at the first opportunity.

The incident is not an adequate ground for reversal, however, because the prosecutor was correct in deciding that the form did not constitute a verdict and because defendant was in fact afforded

every protection which he could have been given if the prosecution had disclosed the information immediately. The prosecutor did not receive the information in question until after the jury had been discharged. At the time the prosecutor discovered the mark on the form, the jury could have been reassembled and polled to determine whether they had actually reached a verdict. This was in fact done when the information was disclosed. One of the jurors testified at the second trial and again at a hearing on a motion for new trial that she had never decided that defendant was not guilty and that it was her opinion at all times during deliberations that defendant was guilty. It appears that the trial judge did what he could to verify what had happened and acted accordingly.

It is therefore apparent that a verdict was not reached by the first jury. In *United States v Taylor,* 507 F2d 166, 168 (CA 5, 1975), it was held that a jury does not reach a valid verdict until deliberations are over, the result is announced in open court, and no dissent is registered by any of the jurors. *Taylor* states that votes taken in the jury room prior to the announcement in open court are merely preliminary. See GCR 1963, 512.2 and *Wayne County Prosecuting Attorney v Detroit Recorder's Court Judge,* 64 Mich App 408; 235 NW2d 799 (1975), which holds that a juror may recant a previous assent to a verdict at any time prior to his express in-court assent at the polling.

No verdict having been reached and the jury having been properly discharged before the mark on the form was discovered, the only alternative was to proceed with a new trial.

Defendant's second claim of error arising out of the termination of his first trial is that, by reason of the trial court's declaration of a mistrial and

failure to ascertain whether a verdict had been reached, defendant was twice placed in jeopardy, contrary to the Fifth and Fourteenth Amendments of the United States Constitution.

This argument fails insofar as it is based on the premise that a valid verdict of acquittal had been reached by the jury prior to the court's declaration of a mistrial because, as noted above, this premise is not correct.

As to defendant's claim of a violation of the Double Jeopardy Clause by the fact that the mistrial was declared without manifest necessity, we find that the declaration of a mistrial was a proper exercise of discretion. It is not disputed that the juror whose mother had died was upset and unable to continue with jury service. The defendant demanded a twelve-person jury, therefore a mistrial was appropriate by reason of manifest necessity.

In addition, the instant case is one where the defendant consented to the declaration of a mistrial. Where a defendant consents, it is not necessary that there be manifest necessity in order to justify a mistrial so as to preclude the attachment of double jeopardy. *People v Belen Johnson,* 62 Mich App 63; 233 NW2d 188 (1975). Defendant's argument that his consent was uninformed and thus involuntary is without merit because the information which he claimed to lack was in fact incorrect. Furthermore, defendant's decision cannot be attributed to prosecutorial overreaching because the mistrial was declared prior to the prosecutor's receipt of the verdict forms.

Affirmed.