# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
April 21, 2015

v

BRIAN CHRISTOPHER LEE,

        Defendant-Appellant.

No. 313302
Wayne Circuit Court
LC No. 12-003376-FC


PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRANDON LEWIS CAIN,

        Defendant-Appellant.

No. 313303
Wayne Circuit Court
LC No. 12-003375-FC


Before: TALBOT, C.J., and MURPHY and GLEICHER, JJ.

PER CURIAM.

     In Docket No. 313302, Brian Christopher Lee appeals as of right his jury trial conviction of two counts of assault with the intent to murder (AWIM)[1] and possession of a firearm during the commission of a felony (felony-firearm).[2] Lee was sentenced to concurrent sentences of 13 to 30 years' imprisonment for each AWIM conviction, to be served consecutive to a sentence of two years' imprisonment for the felony-firearm conviction. In Docket No. 313303, Brandon Lewis Cain appeals as of right his jury trial conviction of two counts of AWIM,[3] for which he

---

[1] MCL 750.83.

[2] MCL 750.227b.

[3] MCL 750.83.

-1-

was sentenced to concurrent terms of 28 to 50 years' imprisonment for each conviction.[4]  We affirm in both appeals.

## I.  STATEMENT OF FACTS

On February 8, 2012, at about midnight, Cain picked up Marlin Church in Cain's black Town and Country minivan.  Lee, Glen Hunter, Jr., and Ashley Conaway[5] were also in the vehicle.  Cain drove this group to the Sphinx Club, a topless bar.  The group met Justin Simmons and Andre Douglas, who is Church's uncle, at the Sphinx Club.  Cain, Church, Lee, Hunter, and Douglas consumed alcohol at the club.  At about 2:00 a.m., Cain left the club in his minivan with the same individuals that he arrived with.  Douglas left the club separately driving a white Buick Century.  Both vehicles traveled to Church's house on Glastonbury in Detroit.  Douglas pulled into the driveway first, followed by Cain.  Church was intoxicated and not feeling well, so he fell asleep inside of the minivan.  Conaway also remained inside the minivan, while the others exited the vehicle.  Conaway reported to police that Cain started to act "crazy," so Conaway called her friend, Abreeya Brown, to pick her up.  When Brown arrived, Conaway exited Cain's vehicle and got into the passenger seat of Brown's car.

Cain then approached the driver's side of Brown's car and asked Conaway if she was going to let him drive her home or leave with Brown.  Conaway responded that Brown would drive her home because she had school the next day.  Cain then unsuccessfully tried to take the keys out of the ignition of Brown's vehicle.  Cain called over Lee, who was standing nearby, and asked Lee whether he had his gun on him.  Lee responded in the affirmative.  Cain then directed Lee to first shoot the driver, and then "shoot up" the car, if Brown and Conaway drove away.[6]  Cain commented that the women could roll up the window of the car and decide what they were going to do.  Cain also stated that he had "already beat two murder cases" and that he would make Conaway and Brown the third.  Brown was too scared to drive, so Conaway offered to drive instead.  The women switched seats, and Brown lowered her head and upper body while seated in the passenger seat.  As Conaway drove away, Lee fired two shots into the air followed by seven shots at Brown's vehicle.[7]  The back window of the car was shattered and one of the rear tires flattened.  Conaway was struck by a bullet fragment in the back of the head.

Church awoke to the sound of gunshots coming from the behind the minivan in which he was sleeping.  Church looked out of the windows of the minivan and saw a black car with a shattered back window driving away.  Hunter and Douglas were on the sidewalk near the house.

---

[4] Cain was on parole at the time of his convictions.  Thus, the sentences for his AWIM convictions were to run consecutive to his sentence for the parole matter.

[5] Cain and Conaway were in a relationship, and Hunter is Cain's brother.

[6] Evidence was also presented that Cain specifically told Lee to shoot Conaway and Brown, as opposed to their vehicle.

[7] Nine bullet casings fired from a 9 mm pistol were recovered from the scene, and a firearm expert determined that the bullets were all fired from the same gun.

As Church exited the passenger side of the minivan, he saw that Lee was holding a handgun and that Cain was walking toward the driver's side of the minivan. When Church asked Lee what happened, Lee told him not to worry about it. Lee then got into the passenger seat of the minivan and Cain got into the driver's seat, and the two men drove away in the opposite direction from where the women's vehicle was headed.

The women drove to Sinai-Grace Hospital in Detroit. Conaway reported to law enforcement that Cain told someone named "Little B" to shoot.[8] After the shooting, Cain allegedly offered both Conaway and Brown $5,000 each if they did not testify against him. Before the trial, on February 28, 2012, both women were abducted and were later found murdered. Cain and Lee were two of five individuals charged with those crimes.[9]

## II. DOCKET NO. 313302

In Docket No. 313302, Lee argues that there was insufficient evidence admitted at trial to convict him of AWIM. We disagree. We review challenges to the sufficiency of the evidence "de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt."[10]

To prove AWIM, the prosecutor was required to demonstrate that Lee committed " '(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.' "[11] Lee's "intent could be inferred from any facts in evidence . . . ."[12] With regard to proving intent, "This Court has consistently observed that '[b]ecause of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient.' "[13] As this Court has explained:

---

[8] Lee is also known as "B.B." Although a witness testified that Hunter was known as "Little B," Lee does not dispute his identity as the shooter on appeal.

[9] This Court peremptorily reversed Cain's conviction and sentence resulting from the abductions and murders of Conaway and Brown and remanded the matter to the trial court for a new trial because the jury was improperly sworn. *People v Cain*, unpublished order of the Court of Appeals, entered May 2, 2014 (Docket No. 314342). A similar motion for peremptory reversal was filed by Lee regarding his conviction and sentence resulting from the abductions and murders, but was held in abeyance pending the Michigan Supreme Court's disposition of the application for leave to appeal, or the resulting appeal if leave is granted, filed by Cain. *People v Lee*, unpublished order of the Court of Appeals, entered August 22, 2014 (Docket No. 316110).

[10] *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014).

[11] *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014) (citation omitted).

[12] *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010).

[13] *Id*. at 196-197 (citation omitted).

The requisite intent may be gleaned from the nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, [the defendant's] conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made.[14]

Before Lee began to fire, Cain instructed him to kill the car's driver and "shoot up" the car if the women attempted to drive away. When Conaway did drive away, Lee fired nine shots from a 9 mm pistol, seven of which were directed toward Brown's vehicle. A fragment of one bullet struck Conaway in the head. After the assault, Lee left the scene and told Church not to worry about what had occurred. Taking these facts in the light most favorable to the prosecution, a rational jury could easily have determined that Lee intended to kill Conaway and Brown. Accordingly, Lee's argument is without merit.

### III. DOCKET NO. 313303

### A. EVIDENTIARY ERROR

In Docket No. 313303, Cain argues that the trial court improperly admitted evidence regarding his involvement in the abduction and murders of Conaway and Brown by misapplying MRE 804(b)(6). We disagree. "A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion."[15] "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes."[16]

In a pretrial motion, the prosecution sought to have hearsay statements of Conaway and Brown regarding the February 8, 2012 shooting admitted pursuant to the hearsay exception of forfeiture by wrongdoing.[17] This rule is rooted in the common law, "and is based on the maxim that 'no one should be permitted to take advantage of his wrong.' "[18] Admission of hearsay evidence based on forfeiture by wrongdoing requires the prosecution to "show by a preponderance of the evidence that: (1) the defendant engaged in or encouraged wrongdoing; (2) the wrongdoing was intended to procure the declarant's unavailability; and (3) the wrongdoing did procure the unavailability."[19] Here, the trial court found that the above criteria were satisfied and the hearsay statements were admissible against Cain. However, the trial court found that the

---

[14] *People v Brown*, 267 Mich App 141, 149 n 5; 703 NW2d 230 (2005) (quotation marks and citations omitted).

[15] *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013).

[16] *People v Mineau*, 306 Mich App 325, 329; 855 NW2d 755 (2014).

[17] MRE 804(b)(6). See also *Burns*, 494 Mich at 110 ("A defendant can forfeit his right to exclude hearsay by his own wrongdoing.").

[18] *Burns*, 494 Mich at 110 (citation omitted).

[19] *Id*. at 115.

hearsay statements were not admissible against Lee because the trial court did not believe the evidence was sufficient to demonstrate that Lee was involved in the abductions and murders. Cain does not challenge the admission of Conaway's and Brown's hearsay statements on appeal.

Rather, Cain's allegation of error involves the trial court's decision to admit testimony and other evidence tending to show that Cain was involved in the abductions and murders of Conaway and Brown.[20] In the second motion filed the same day as its motion regarding MRE 804(b)(6), the prosecution sought to have this evidence admitted because such testimony demonstrated consciousness of guilt, and as such, was "admissible as an admission by conduct." While the trial court allowed this evidence to be admitted, its reasoning for doing so is not entirely clear. In discussing the issue, the trial court acknowledged that the concepts of consciousness of guilt and admission by conduct were distinct. The trial court explained that certain evidence was "consciousness of guilt, all day long." But with regard to other evidence, it referenced the concept of admission by conduct.

Cain now argues that the admission of this substantive evidence was erroneous because it is for the trial court to make the factual determinations required under MRE 804(b)(6), and thus, the substantive evidence of Cain's involvement in the abductions and murders should have not been placed before the jury. Cain ignores that the trial court's decision to allow this substantive evidence to be admitted was not based on a misunderstanding of the procedure involving MRE 804(b)(6). Rather, the trial court's decision was that this evidence was admissible for a different purpose, either to prove consciousness of guilt or as an admission by conduct. Accordingly, Cain's arguments premised on MRE 804(b)(6) do not demonstrate error.

Cain also asserts that this evidence was irrelevant and prejudicial. Generally, all relevant evidence is admissible, while irrelevant evidence is not.[21] However, if the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice it presents, it may be excluded.[22] Evidence that Cain was involved in the abductions and murders of Conaway and Brown was highly relevant. This evidence demonstrated Cain's consciousness of guilt, as it showed that he wished to cover up his crime by preventing Conaway and Brown from testifying against him.[23] Nor was this evidence inadmissible due to its risk of prejudice. "All relevant

---

[20] The evidence admitted against Cain included eyewitness testimony identifying him as one of the abductors, evidence regarding a vehicle matching the description of the car Conaway was seen being forced into, testimony from another woman Cain was intimate with that Cain told her that she would not have to worry about Conaway anymore, and photographic evidence of the women's bodies in the gravesite from which they were recovered.

[21] MRE 402.

[22] MRE 403.

[23] See *People v Scholl*, 453 Mich 730, 740; 556 NW2d 851 (1996) ("A defendant's threat against a witness is generally admissible. It is conduct that can demonstrate consciousness of guilt."); *People v Mock*, 108 Mich App 384, 389; 310 NW2d 390 (1981) (evidence was correctly admitted "under the long-standing case-law doctrine that evidence of a defendant's subsequent

-5-

evidence is prejudicial; it is only unfairly prejudicial evidence that should be excluded."[24] "Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury."[25] While the evidence admitted by the trial court was certainly damaging, the mere fact that evidence is damaging does not meant that it is unfairly prejudicial.[26] Cain offers no explanation of how this evidence was unfairly prejudicial, and we will not unravel his argument for him.[27] On the whole, Cain has not demonstrated that the trial court abused its discretion by admitting evidence indicating that he participated in the abductions and murders of Conaway and Brown.

Cain also argues that the trial court erred by failing to properly instruct the jury regarding how to consider this evidence. Cain failed to preserve this argument by requesting an instruction below.[28] Thus, our review is limited to plain error affecting substantial rights.[29] We find Cain's contention of error without merit. Cain's argument is based on his belief that the trial court admitted this evidence through a misapplication of MRE 804(b)(6). As discussed, this is not what occurred. Moreover, Cain offers no citation to any authority supporting his contention of instructional error, nor does he offer any insight into what instruction he believes should have been provided. Cain "may not simply announce a position or assert an error and then leave it up to this Court to discover and rationalize this basis for his claims, or unravel and elaborate for him his arguments, and then search for authority to either sustain or reject his position."[30]

## B. SUFFICIENCY OF THE EVIDENCE AND MOTION FOR A DIRECTED VERDICT

Cain next argues that the prosecutor failed to present sufficient evidence to sustain his convictions and that the trial court erred in denying his motion for a directed verdict. We disagree. Whether presented as a challenge to the sufficiency of the evidence or of the trial court's denial of Cain's motion for a directed verdict, we review the issue de novo.[31] And with regard to both claims, we must take the evidence in the light most favorable to the prosecutor and determine whether a rational fact-finder could conclude that the elements of the crimes were proved beyond a reasonable doubt.[32]

_____

efforts to influence or coerce the witnesses against him is admissible where such activity demonstrates a consciousness of guilt on the part of the defendant.").

[24] *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005).

[25] *Id*. at 614.

[26] *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995).

[27] *People v Bowling*, 299 Mich App 552, 559-560; 830 NW2d 800 (2013).

[28] *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000).

[29] See *People v Aldrich*, 246 Mich App 101, 125; 631 NW2d 67 (2001).

[30] *Bowling*, 299 Mich App at 559-560.

[31] *Gaines*, 306 Mich App at 296; *Aldrich*, 246 Mich App at 122.

[32] *Henderson*, 306 Mich App at 9; *Aldrich*, 246 Mich App at 122.

Cain was convicted of AWIM based on an aiding and abetting theory. "[T]he elements of AWIM, once again, are '(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.' "[33] "[T]o convict a defendant of aiding and abetting a crime, a prosecutor must establish that '(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement.' "[34]

The evidence was sufficient to allow a rational juror to convict Cain of AWIM under an aiding and abetting theory. As discussed, substantial evidence supported Lee's conviction of AWIM, satisfying the first element of Cain's convictions. The evidence also demonstrated that Cain encouraged Lee to shoot Conaway and Brown and that he intended that Lee kill the women. Cain specifically directed Lee to shoot the women if they drove away. Cain also stated, in Lee's presence, that he had already beat two murder cases, and that he would make Conaway and Brown the third. The women then drove away, which was followed by Lee firing nine shots. The prosecutor also presented evidence that Cain attempted to persuade the women not to testify against him, and that when his efforts were rebuffed, he participated in their abductions and murders. This evidence easily supported Cain's convictions under an aiding and abetting theory. Accordingly, Cain is not entitled to relief.

## C. MOTION TO ADJOURN

Cain next argues that the trial court erred when it failed to grant his request for an adjournment of trial. We disagree. "We review the trial court's ruling on [Cain]'s request for an adjournment or a continuance for an abuse of discretion."[35]

"A motion for adjournment must be based on good cause."[36] " 'Good cause' factors include 'whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments.' "[37] "Even with good cause . . . the trial court's denial of a request for an adjournment or continuance is not grounds for reversal unless the defendant demonstrates prejudice as a result of the abuse of discretion."[38] After the trial court denied his objection to the admission of evidence of his involvement in the abductions and murders, Cain requested an adjournment, arguing that he could not receive a fair trial with regard to the February 8, 2012 incident until his trial for the

---

[33] *Henderson*, 306 Mich App at 9 (citation omitted).

[34] *People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004) (citation omitted).

[35] *People v Coy*, 258 Mich App 1, 17; 669 NW2d 831 (2003).

[36] *Id*. at 18.

[37] *Id*. (citation omitted).

[38] *Id*. at 18-19.

murders of Conaway and Brown was completed. On appeal, Cain does not explain how his request was based on good cause, nor does he explain how the denial caused him prejudice.[39] Again, Cain "may not simply announce a position or assert an error and then leave it up to this Court to discover and rationalize this basis for his claims, or unravel and elaborate for him his arguments, and then search for authority to either sustain or reject his position."[40] Accordingly, we find no error requiring reversal.

### D. INEFFECTIVE ASSISTANCE OF COUNSEL

Cain argues that the trial court erred when it denied his motion for a new trial based on his claim that trial counsel was ineffective for failing to call Simmons, who claimed to be an eyewitness to the February 8, 2012 shooting. We disagree. This Court previously remanded the matter to the trial court for an evidentiary hearing pursuant to *People v Ginther*.[41] After holding the evidentiary hearing, the trial court denied Cain's motion for a new trial. We review the trial court's denial of Cain's motion for a new trial for an abuse of discretion.[42] "A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law. We review factual findings for clear error, but we review de novo questions of constitutional law."[43]

> To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for defense counsel's errors, there was a reasonable probability that the result of the proceeding would have been different. A defendant must affirmatively demonstrate that counsel's performance was objectively unreasonable and so prejudicial as to deprive him of a fair trial. The defendant must also overcome the presumption that the challenged action might be considered sound trial strategy.[44]

At the evidentiary hearing, Simmons testified that he attempted to contact Cain's trial counsel on multiple occasions, each time informing counsel that he would provide exculpatory

---

[39] Although his contention of error clearly argues that it was error to deny his request for an adjournment, Cain frames the issue as one questioning whether the trial court properly controlled the court proceedings, contending that the trial court allowed the "prosecutor [to] have a free[-]for[-]all instead of a trial" by allowing evidence regarding the abductions and murders to be presented. While Cain may disagree with this evidentiary ruling, we find nothing in the record demonstrating that the trial court did not adequately control the proceedings.

[40] *Bowling*, 299 Mich App at 559-560.

[41] 390 Mich 436; 212 NW2d 922 (1973).

[42] *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012).

[43] *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008) (citation omitted).

[44] *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008) (citations and quotations omitted).

evidence.[45] Simmons testified that had he been called as a witness, he would have testified that Cain did not encourage Lee to shoot at the vehicle, but rather, that Cain attempted to diffuse the situation. Trial counsel testified that he had no recollection of Simmons's name coming up during his investigation of the matter. After hearing this testimony, the trial court found that trial counsel's failure to investigate and call Simmons was objectively unreasonable. Because the issue turned largely on a credibility determination, that being whether Simmons credibly testified that he contacted Cain's attorney, we find no clear error in the trial court's factual conclusion. As the finder of fact, the trial court's credibility determinations are entitled to great deference.[46] Because counsel failed to adequately investigate a potentially exculpatory witness, we agree that trial counsel's conduct was objectively unreasonable.

However, the trial court denied the motion after concluding that Cain could not demonstrate that, had Simmons testified, a different result was reasonably likely. The trial court's conclusion was based on testimony from another witness, Hunter, who testified that Simmons was not among the individuals present at the February 8, 2012 shooting. While not explicitly stated, because Simmons's version of events contradicted Hunter's testimony, the trial court's implicit ruling was a conclusion that Simmons's testimony was not more credible than Hunter's testimony.[47] We decline to interfere with this credibility determination, particularly given the trial court's superior ability to judge the credibility of those witnesses testifying before it.[48] Finding no clear error in the trial court's credibility determination, we agree that Cain has not demonstrated that a different result was reasonably likely. "Furthermore, the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense."[49] Had Simmons testified, he would have provided evidence that Cain did not intend for Lee to kill Conaway or Brown. Cain pursued this precise defense, relying on various portions of testimony and evidence presented during trial. Thus, the failure to call Simmons did not constitute ineffective assistance of counsel.

Cain's argument stems from a statement made by the trial court in announcing its decision. At trial, Douglas testified that Simmons was not present at the shooting. The trial court stated that it did not believe Douglas was credible, but that it would not substitute its belief regarding Douglas's credibility for the jury's determination. Cain claims that the comment by the trial court demonstrated the trial court's mistaken belief that it could not use its own findings of fact regarding Douglas's credibility to determine whether Cain was entitled to a new trial. Cain ignores that immediately after stating that it would not interfere with the jury's

---

[45] Cain also testified that he provided Simmons's name to his attorney before trial and asked that counsel contact Simmons.

[46] *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008).

[47] See *id*. ("By declining to conclude that Dr. Simson's testimony had effectively refuted the testimony of Dr. Pacris, the trial court implicitly held that Dr. Simson was not more credible than the prosecution's experts.").

[48] See *id*.

[49] *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).

determination regarding Douglas's credibility, the trial court stated, "However, as far as this is concerned, this motion, *I am discounting his testimony.*" The trial court discussed Hunter's testimony, who likewise could not remember Simmons having been present at the shooting. The trial court explained that, in light of Hunter's testimony, it did not believe Simmons's testimony would have led to a different result.[50] It is clear that the trial court understood that it could weigh Simmons's credibility against that of other witnesses, such as Douglas and Hunter, when it decided the motion.[51] When it did so, it found that Simmons's testimony was not more credible that provided by Hunter. Cain's argument is without merit.[52]

## E. PROSECUTORIAL MISCONDUCT

Cain makes several unpreserved claims of prosecutorial misconduct.[53] We find that they all lack merit. "[A] defendant's unpreserved claims of prosecutorial misconduct are reviewed for plain error. In order to avoid forfeiture of an unpreserved claim, the defendant must demonstrate plain error that was outcome determinative."[54] Further, this Court will not reverse a conviction if a timely instruction could have cured any prejudice arising from the prosecutor's conduct.[55]

Cain first challenges the prosecution's failure to produce photographs of Brown's car that was damaged during the shooting and the bullet fragment that struck the back of Conaway's head. "[S]uppression by the prosecution of evidence [requested by and] favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[56] The prosecution advised at trial that photographs of the damaged vehicle did not exist, and Cain points to no evidence that this assertion was inaccurate.[57] Thus, Cain has failed to demonstrate that the failure to produce such pictures was the result of prosecutorial misconduct. Cain has also failed to demonstrate that he requested that the bullet fragment be made available at trial. Moreover, Cain has not explained

---

[50] The trial court specifically stated that it was "relying on the testimony of Glen Hunter."

[51] *Dendel*, 481 Mich at 130-131.

[52] Cain's statement of the question presented also asks if the trial court misunderstood the facts elicited at trial. However, Cain does not identify any factual errors in his brief. We decline to unravel this argument on Cain's behalf. *Bowling*, 299 Mich App at 559-560.

[53] In his brief, Cain acknowledges that he raised no objections to the errors he asserts, but infers that his claims are preserved because he discussed the issues in his closing argument to the jury. We remind counsel that to be preserved, the issue must be raised before the trial court, not before the jury.

[54] *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001) (citation omitted).

[55] *Id.*

[56] *People v Banks*, 249 Mich App 247, 254-255; 642 NW2d 351 (2002) (quotation marks and citation omitted).

[57] Indeed, as Cain notes in his brief, he relied on the lack of this evidence in his closing argument.

how the failure to produce any of this evidence affected the outcome of the proceedings.[58] As such, Cain's arguments must fail.

Cain also argues that the prosecutor committed misconduct when she asked the jury not to punish Conaway because certain evidence could not be presented at trial. "While it is true that arguments which are little more than an appeal to the jury's sympathy for the victim are improper, [Cain] mischaracterizes the remarks by taking them out of context."[59] "[T]he prosecutor's comments must be considered in light of defense counsel's comments."[60] In his closing argument, defense counsel discussed the fact that neither the victims' car nor the photographs of the car were produced at trial. The prosecution commented in its rebuttal argument that officers did not get to the "scene until almost noon that day to process it. Don't punish [Conaway] because they couldn't be without that car long enough to get that processed. That's not fair. That's not fair." When placed in context, the comment was not appealing to the jury's sympathy, but rather, was explaining why the evidence defense counsel discussed was lacking. Moreover, "[A]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument."[61] For these reasons, Cain is not entitled to relief.

Cain also erroneously asserts that the prosecution committed misconduct when it failed to disclose the existence of a potential witness, Anthony Lovejoy, in violation of *Brady v Maryland*.[62] To establish a *Brady* violation, the defendant must establish: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material."[63] Cain offers no explanation of what testimony Lovejoy could have provided, leaving this Court with no way to determine whether his testimony was in any way material or favorable to Cain. Accordingly, Cain has failed to demonstrate that the prosecutor committed a *Brady* violation.

## F. MOTION FOR A MISTRIAL

Cain claims that the trial court erred when it denied his motion for a mistrial after the trial court gave preliminary jury instructions that improperly included certain lesser-included offenses. We disagree. "This Court reviews jury instructions as a whole to determine if the trial court made an error requiring reversal."[64] Here, while the jury preliminarily received inaccurate

---

[58] Rather, Cain argues that it was "more than fair" for his trial counsel to argue to the jury that the prosecution should have presented this evidence at trial. We fail to understand how trial counsel's discussion of this evidence in his closing argument can support a claim that the prosecutor committed misconduct.

[59] *People v Hedelsky*, 162 Mich App 382, 385-386; 412 NW2d 746 (1987).

[60] *Watson*, 245 Mich App at 592-593.

[61] *Id*. at 593 (citation and quotation marks omitted).

[62] 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

[63] *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014).

[64] *People v Cain*, 238 Mich App 95, 127; 605 NW2d 28 (1999).

instructions regarding the crimes Cain was charged with, as Cain now acknowledges, the trial court later provided a curative instruction. Because "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors[,]" reversal is not warranted.[65]

## G. SENTENCING

Finally, Cain argues that the trial court committed error requiring resentencing when it made inappropriate comments at sentencing that evidenced a personal bias against him and punished him for the alleged abductions and murders of Conaway and Brown instead of the convictions for AWIM. Cain is precluded from raising this issue on appeal. If a "sentence is within the appropriate guidelines sentence range, it is only appealable if there was a scoring error or inaccurate information was relied upon in determining the sentence and the issue was raised at sentencing, in a motion for resentencing, or in a motion to remand."[66] Cain did not raise his contention of error in the trial court or in a motion to remand, and his sentence was within the sentencing guidelines range.[67] Accordingly, his sentence is not appealable on this ground.

Moreover, Cain's argument is without merit. Cain's argument assumes that the trial court's comments were improper because they demonstrate bias towards him, and then cites authority regarding whether resentencing would be required to take place before another judge. Cain, however, provides no authority demonstrating that the trial court's comments require resentencing in the first instance. Having demonstrated no error requiring resentencing, the authorities cited by Cain do not require resentencing.[68]

Affirmed.

/s/ Michael J. Talbot
/s/ William B. Murphy
/s/ Elizabeth L. Gleicher

---

[65] *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

[66] *People v Kimble*, 470 Mich 305, 310-311; 684 NW2d 669 (2004).

[67] Cain was sentenced to a minimum sentence of 336 months, near the lower end of the guidelines range of 225 to 750 months.

[68] See *People v Hill*, 221 Mich App 391; 561 NW2d 862 (1997) (resentencing required because the trial court failed to prepare separate sentencing information report when imposing consecutive sentences; however, resentencing before a different judge was unnecessary); *People v Evans*, 156 Mich App 68; 401 NW2d 312 (1986) (resentencing ordered because substitute counsel was appointed to represent the defendant with no explanation regarding why the defendant's trial counsel could not appear; resentencing ordered to be before a different judge).